JAKOBOWSKI *v.* BACALIA.

1. DEEDS—FRAUD—UNDUE INFLUENCE—HOMESTEAD—CONSIDERATION.
   In suit to set aside deed of decedent's homestead to defendants who had cared for decedent, an elderly bachelor, before execution of deed, record supports trial judge's finding that there was no fraud or undue influence established, where, although defendants paid only $800 in cash, they agreed to, and did, move into the homestead, expended upwards of $2,000 in repairs and improvements, and enabled deceased to live and die in the place where he desired to do so.

2. SAME—HOMESTEAD—FRAUD—UNDUE INFLUENCE—BURDEN OF PROOF.
   The burden of establishing that fraud or undue influence was used by grantees to secure deed of homestead of grantor, now deceased, is upon plaintiffs who seek to set aside such deed.

3. DESCENT AND DISTRIBUTION—EQUITY.
   Courts are not permitted to make equitable distribution of estates, but are concerned only in giving effect to the legal acts of decedents.

4. BANKS AND BANKING—JOINT ACCOUNTS—TITLE OF SURVIVOR—PRESUMPTIONS.
   Where a joint bank account, with right of survivorship, is created, there is a statutory presumption of ownership in the survivor (3 Comp. Laws 1929, § 12063, as amended by Act No. 286, Pub. Acts 1937).

5. SAME—JOINT DEPOSITS—PRESUMPTIONS—EVIDENCE.
   Reasonably clear and persuasive proof is required to overcome the statutory presumption that joint deposits become the property of the survivor of those jointly named as depositors (3 Comp. Laws 1929, § 12063, as amended by Act No. 286, Pub. Acts 1937).

6. SAME—JOINT ACCOUNT—EVIDENCE.
   In executor's suit to establish title to joint bank account in name of deceased and defendant who with her husband had

moved into deceased's home and cared for him, plaintiff failed to overcome burden of establishing that such account was not intended to be a joint account with rights to survivor, the mere fact that defendant in her answer stated the reason for establishing such account not lessening plaintiff's burden of showing it was not to be a survivorship account (3 Comp. Laws 1929, § 12063, as amended by Act No. 286, Pub. Acts 1937).

7. BONDS—JOINT OWNERSHIP—EVIDENCE—DEPOSIT OF PROCEEDS FROM COUPONS IN JOINT BANK ACCOUNT.

Where a joint bank account with right of survivorship was opened by decedent for himself and defendant, latter's claim that at the same time title to some school bonds, owned by decedent, would also be owned by them with right of survivorship and the proceeds from coupons would be deposited in the joint account, evidence that the proceeds from coupons were placed in such joint account was insufficient to create an agreement that the bonds were to be jointly owned, hence the bonds were property of the decedent's estate.

Appeal from Wayne; Callender (Sherman D.), J. Submitted April 2, 1946. (Docket No. 11, Calendar No. 43,197.) Decided June 3, 1946.

Bill by Stephen Jakobowski, Jr., by his next friend and Stephen Jakobowski, Sr., executor of the estate of Steve Jakobowski, deceased, against Anthony and Bernice Bacalia and another to determine that deceased was at the time of his death owner of funds in joint bank account and to set aside a deed. Decree for defendants. Plaintiffs appeal. Defendants cross-appeal. Affirmed.

*Jesse W. Bollinger* (*Walter S. Rae,* of counsel), for plaintiffs.

*Emil Wm. Colombo,* for defendants.

SHARPE, J. This is a suit by Stephen Jakobowski, Sr., executor of the estate of Steve Jakobowski, deceased, and Clare A. English, next friend of

Stephen Jakobowski, Jr., against Anthony Bacalia and Bernice Bacalia, his wife, and the Manufacturers National Bank of Detroit, a Federal banking corporation, defendants, for a return to the estate of Steve Jakobowski, deceased, of certain real estate and personal property.

Steve Jakobowski never married. He lived in Detroit with his mother, his brother John and John's wife. In 1913 they moved to Inkster where John and Steve bought a farm. All of these parties lived and died in this homestead. Steve was the last survivor. John died in 1937 and thereafter Steve continued to live in the same house with John's widow. In the spring of 1940, John's widow died. Steve then asked his nephew Stephen Jakobowski, Sr., to come and live with him. The nephew, plaintiff executor herein, and his wife moved in with Steve in April, 1940. Shortly thereafter Steve was taken to attorney Bollinger who prepared a will for him in which he left all of his property to Stephen Jakobowski, Jr., then three years of age and the son of Stephen Jakobowski, Sr. The will was dated May 2, 1940, and was offered for probate on August 12, 1943.

Plaintiff executor and wife lived with Steve for a period of seven months when he asked them to move. After plaintiff and wife moved from Steve's home, he lived there alone for a period of approximately one year. During this time, Bernice Bacalia, one of the defendants, took care of his home, did his washing, cooking and cleaning without compensation. While Steve lived alone Bernice Bacalia asked him to move out of the old homestead and to come and live with her family in their brick, steam-heated home. He refused to move from his old homestead. On February 10, 1941, Steve and defendant Bernice Bacalia went to the Manufac-

turers National Bank of Detroit in Dearborn where he had his bank account changed to a joint account with Bernice Bacalia with the right to make deposits and withdrawals and right of survivorship.

On January 2, 1942, defendants Bernice Bacalia and her husband purchased the homestead of deceased for the sum of $800. On January 17, 1942, defendants moved into the homestead. Later they installed a furnace and made other improvements at a cost of approximately $2,000. Steve lived there until his death.

The bill of complaint filed by plaintiffs charges that deceased at the time of his death was 77 years old; that for a long time prior to his death he was in a feeble and helpless condition and unable to attend to his business affairs; that at the time deceased entered into an arrangement for a joint bank account with Bernice Bacalia the defendants Anthony Bacalia and Bernice Bacalia, his wife, were in a confidential relationship with deceased who was persuaded by defendants to enter into such an arrangement for the sole purpose of enabling defendant Bernice Bacalia to pay obligations of deceased during his lifetime and not to obtain any rights to the fund after the death of deceased; that deceased by false and fraudulent means was persuaded to deed the real estate to defendants Anthony Bacalia and Bernice Bacalia, his wife; and that such conveyance was without consideration.

Defendants Anthony Bacalia and Bernice Bacalia filed an answer to the bill of complaint in which it is alleged that said defendants entered into an agreement with deceased whereby in consideration that defendants would care for deceased for the remainder of his life, said deceased would open up a joint bank account with rights of survivorship with Bernice Bacalia; that on January 12, 1942,

deceased deeded to defendants certain real estate for a cash consideration of $800 and the further consideration that defendants would care for deceased during his lifetime.

The cause came on for trial and the trial court made the following finding of facts:

"The disputed question, so far as this title to the property contained in this bank account deposit, is whether there was proof of fraud or undue influence. Upon the record here and the proofs, independent of the testimony of the three witnesses, who in this trial were permitted to testify to facts, some of which may have been equally within the knowledge of the deceased—I say, independent of that, the court has no difficulty in finding from these proofs that there was no fraud nor undue influence established. The court is impressed from these proofs, and from all the circumstances in this case, that it was the intent of both the deceased and of Bernice Bacalla (Bacalia), when this bank account was opened, it was the intent and purpose of the deceased at that time that Bernice Bacalla should have whatever was in that bank deposit under that registration at the time of the death of the deceased.
*　*　*

"Now the other piece of property consists of the home where this man had lived all his life and around which there is for this whole family apparently, considerable sentiment, and upon the pleadings here, this court is asked to set aside this deed on the ground that it was obtained without consideration and by fraud and undue influence. There isn't any proof whatsoever upon which the court could make any such finding. On the other hand it appears undisputed that the defendants paid as at least a part of the consideration for this place—that is the home and the lot or lots, which are included in the deed to that home—they paid $800.　*　*　*

"It is my opinion and decision that by virtue of this statute, the title to that property contained in that bank account on the death of the deceased, was vested in the survivor, Bernice Bacalla, and it is my opinion, also, that the title to the home property, as evidenced by the warranty deed from Steve Jacobowski, an unmarried man, to Anthony Bacalla and Bernice Bacalla, his wife, dated the 12th day of January, 1942—it is my opinion that the title to that property was properly and legally vested in Anthony Bacalla and Bernice Bacalla, his wife."

It is also to be noted that prior to the death of deceased he was the owner of three school bonds of the city of Pontiac school district of the value of $3,000. The trial court found that these bonds were the property of deceased's estate.

Plaintiffs appeal and urge that the burden is upon defendants to show that the bank account, bonds and real estate are their property by virtue of an express contract; that a confidential relationship existed between defendants and deceased and they have the burden of showing that they took no advantage and did not exert undue influence against the deceased; and that the defendants were guilty of fraud in purchasing the real estate for less than one half of its value.

We shall first discuss the issues involved in the sale of the real estate. Defendants claim they purchased this real estate on or about January 2, 1942, while plaintiffs claim this transfer came about by reason of fraud and for an inadequate consideration. We have examined the record carefully and are in accord with the finding of the trial court that there was no fraud or undue influence established. The burden of establishing fraud or undue influence in this case rests upon plaintiffs. The price paid for this piece of real estate was not the

only consideration. Defendants gave up their own home and moved into the old homestead and spent upwards of $2,000 on repairs and enabled deceased to live and die in the place where he wanted to live and die.

In *Pritchard* v. *Hutton*, 187 Mich. 346, 355, we said:

"Courts are not permitted to make equitable distribution of estates, but are concerned only in giving effect to the legal acts of decedents."

In the case at bar, deceased had the right to dispose of his property as he saw fit. He knew what he wanted to do and accomplished it in a legal manner. In such cases courts do not interfere.

It is also urged that when defendant Bernice Bacalia claims right to the joint bank account as a survivor by reason of an express contract, the burden rests upon her to establish such contract.

Where a joint bank account with right of survivorship is created, there is a statutory presumption of ownership in the survivor. 3 Comp. Laws 1929, § 12063, as amended by Act No. 286, Pub. Acts 1937 (Comp. Laws Supp. 1940, § 12063, Stat. Ann. 1943 Rev. § 23.303).

In *Lau* v. *Lau,* 304 Mich. 218, we said:

"Plaintiff failed to prove that Charles Lau did not intend to vest title to the joint deposits in Martha Lau (his daughter-in-law) as his survivor. The defendants, having the benefit of the statutory presumption (3 Comp. Laws 1929, § 12063, as amended by Act No. 286, Pub. Acts 1937), must prevail. * * *

"Reasonably clear and persuasive proof, stronger than appears in this record, is required to overcome the statutory provision that deposits of the character here involved 'become the property of' the

survivor of the joint depositors. Otherwise there would be no security or certainty as to the rights of such surviving depositors.''

See, also, *Meigs* v. *Thayer,* 289 Mich. 680; *Maahs* v. *Maahs,* 307 Mich. 549.

In the case at bar the record convincingly sustains defendants' position that the bank account was intended by deceased to be a joint account with rights to survivor. Plaintiff has not overcome the burden of establishing otherwise, nor does the fact that defendant in her answer gave the reason for establishing such an account lessen the burden placed upon plaintiffs of establishing that the account was not intended to be a survivorship account.

Defendants Anthony Bacalia and Bernice Bacalia filed a cross appeal from that part of the decree awarding the school bonds to the estate and urge that at the time of the creation of the joint bank account it was agreed between defendant Bernice Bacalia and decedent that said bonds would be owned by said parties with the right of survivorship and that the proceeds from the coupons of said bonds would be deposited in the joint bank account. We have examined the record carefully and find that the only material evidence relating to the transfer of the bonds to Bernice Bacalia is that the interest received from the coupons was placed in the joint bank account. We find no evidence to sustain the claim that at the time the joint bank account was created there was any agreement between decedent and Bernice Bacalia that the bonds were to be jointly owned. In the absence of evidence upon this issue we are constrained to hold that the bonds are the property of decedent's estate.

The decree of the trial court is affirmed, with the exception of that part of the decree regarding costs. Defendants may recover costs of both courts.

Butzel, C. J., and Carr, Boyles, Reid, North, and Starr, J J., concurred. Bushnell, J., took no part in the decision of this case.