CHRYSLER CORPORATION *v.* NOHMER.

1. APPEAL AND ERROR—INTERPLEADER CASES—DE NOVO REVIEW.
   Since a suit commenced by bill of interpleader is an equity case, the review thereof by the Supreme Court is *de novo.*

2. INSURANCE—CHANGE OF BENEFICIARY—MENTAL INCOMPETENCY—BURDEN OF PROOF.
   Appellee who had been named as beneficiary under certificate issued under group life insurance policy and who claimed insured was mentally incompetent to change beneficiary at time it was claimed by appellant to have been changed had burden of proving mental incompetency on part of insured, since in the absence of proof as to nature of insured's illness, it may not be assumed that his condition became suddenly and uniformly worse in his last days, without intervals of increased physical and mental vitality.

3. SAME—CHANGE OF BENEFICIARY—COMPETENCY OF INSURED—PHYSICAL WEAKNESS.
   Mere physical weakness or debility on the part of an insured under a life insurance policy is not sufficient to vitiate his change of beneficiary if he had sufficient intelligence to understand the transaction.

4. SAME—CHANGE OF BENEFICIARY—MENTAL INCOMPETENCY—BURDEN OF PROOF—EVIDENCE.
   In interpleader suit between appellee, a minor girl who had been named as beneficiary in certificate issued plaintiff's employee under group life insurance policy, and appellant, insured's brother who claimed proceeds under change of beneficiary executed about four days before insured died, evidence required finding that appellee failed to sustain burden of proof that insured was not mentally competent to execute change of beneficiary.

5. SAME—CHANGE OF BENEFICIARY—UNDUE INFLUENCE—OPPORTUNITY.
   Showing of mere opportunity to exert undue influence upon insured to obtain a change of beneficiary is not sufficient to avoid such a change.

6. Same—Change of Beneficiary—Undue Influence—Mere Persuasion.

Mere persuasion, not amounting to undue influence, is not sufficient to vitiate change of beneficiary in a life insurance policy by the insured thereunder.

7. Same—Change of Beneficiary—Fraud—Undue Influence—Evidence.

In interpleader· suit between parties who were named beneficiaries in certificate issued under group life insurance policy before and after execution of change of beneficiary by insured, evidence *held*, insufficient to show either fraud or undue influence were practiced in procuring the change of beneficiary.

8. Same—Change of Beneficiary—Person Not a Natural Recipient of Bounty—Brother.

The change of beneficiary from one not a natural recipient of insured's bounty to his brother with whom insured, a 64-year-old man, had been living for some time prior to his removal to hospital and toward whom and his wife insured felt very friendly as they had been very good to him *held*, not an unnatural act.

9. Appeal and Error—Abandonment of Claim—Brief.

Claim made in trial court that change of beneficiary in certificate issued under a group life insurance policy was ineffective because change had not been approved by the employer of insured is considered as abandoned where question is not discussed in brief of party objecting to the change.

10. Insurance—Group Policy—Change of Beneficiary—Approval of Employer.

Where it appears that insured had done all that he was required to .do to effect a change of beneficiary in certificate issued under employer's group life insurance policy, the failure of his employer to give formal approval to the change can not vitiate the act of insured.

Appeal. from Wayne; Brennan (John V.), J. Submitted July 15, 1947. (Docket No. 49, Calendar No. 43,345.) Decided October 13, 1947.

Bill of interpleader by Chrysler Corporation, a foreign corporation, against Barbara Nohmer and Lewis B. Way to determine the ownership of proceeds of an insurance policy. Cross bills by each of

the defendants claiming the fund.   Decree for defendant Nohmer.   Defendant Way appeals.   Reversed and decree entered for defendant Way.

*Max E. Klayman*, for defendant Way.

*Lester L. Johnson*, for defendant Nohmer.

CARR, C. J.   Plaintiff herein filed a bill of interpleader in circuit court asking that defendants be required to litigate between themselves their respective claims to the proceeds of a certificate of insurance issued to George Way.   Said insured was an employee of plaintiff at the time of such issuance. It further appears that plaintiff held a group insurance policy executed by the Aetna Life Insurance Company for the accommodation of plaintiff's employees who wished to avail themselves of protection thereunder.   The original application for the certificate was made by Mr. Way on March 14, 1941.   Therein he designated his brother, the appellant Lewis B. Way, as beneficiary.   Before the certificate was issued, however, the applicant was laid off.   Following his resumption of employment and under date of April 9, 1941, he filed a new application designating appellee Barbara Nohmer as the beneficiary.   Thereupon plaintiff changed the original application by crossing out the name of the appellant and inserting therein the name of appellee.   The two applications were fastened together and the certificate issued as of the date of the first application.

The insured deceased on January 3, 1944.   Each defendant made claim to plaintiff for the proceeds payable under the insurance certificate.   The appellant asserted that on December 31, 1943, the insured changed the beneficiary from Miss Nohmer to him-

self by executing written instruments designed to accomplish that result. Attached to the bill of complaint, and designated exhibits C and D respectively, are copies of the documents in question, each being executed, it is claimed, by the insured affixing his mark thereto. Appellant in his pleadings relied on such change of beneficiary, while the guardian for appellee Nohmer, answering the bill of complaint and filing a cross bill against appellant, asserted that exhibits C and D were executed as a result of fraud and undue influence exerted against the insured, and further that the latter was mentally incompetent at the time to understand the nature of the transaction. An interlocutory decree was entered by the court in accordance with the prayer of the bill of complaint, permitting plaintiff to pay into court the proceeds remaining after the payment of certain expenses in accordance with the terms of the certificate, the amount of such balance being $2,394.80, and to tax its costs. Thereupon defendants proceeded to trial on their respective cross bills and the answers thereto. From a decree for appellee Nohmer defendant Way has appealed. This being an equity case it is heard here *de novo*. *Collins* v. *Norris,* 314 Mich. 145.

The principal question at issue on the appeal relates to the mental condition of George Way at the time exhibits C and D, above referred to, were executed. For the purposes of convenience defendants Nohmer and Way are referred to herein as appellee and appellant respectively. The former having asserted mental incompetency on the part of the insured the burden of proof on the question rests on her. *Shea* v. *Siller,* 262 Mich. 279. In support of her claim the testimony of Thomas Edward Ruen was offered and received. Mr. Ruen was an employee of the Chrysler Corporation, and on Decem-

ber 31, 1943, in accordance with a request from the appellant, went to the hospital in which George Way was a patient. He took with him blank forms or cards for the execution of a change of beneficiary, apparently having been advised that such action was desired. The testimony discloses that the insured was in bed, and that the witness and appellant undertook to talk to him. The following excerpts from the testimony of Mr. Ruen indicates the situation as he described it:

"*Q.* Did you talk to George Way?

"*A.* No, George Way was in no condition to talk; he couldn't talk at all. I tried to talk to him but there was no response. I presented what is in the pleadings as exhibit C to George Way.   *   *   *,

"*Q.* How long were you in the room there with George Way and Lewis Way?

"*A.* It was more than a half hour; between a half hour and three quarters of an hour. During that time Lewis Way talked to George Way. The first, to begin with, he said: 'This man is here from Chrysler's to change the beneficiary under your insurance policy,' and whether George Way knew what he was saying or not I don't know, but he made no—there was no sign of recognition or anything on his face; he just lay there and stared into space. And he repeated that 2 or 3 times, and then Lewis Way said: 'Don't you want to change your beneficiary? You don't want that little girl to get the money; don't you want me to get the money?' And there was—he was standing there—I mean laying and just kind of looking at him; but I couldn't —interpretation of the look, I don't know what it was—whether he was gathering strength to make a reply, or whether it was just a look of refusal, I don't know what it was.

"*Q.* Now, during that half hour that you were there, did that course of conduct continue on the

part of Lewis Way to get him to sign this change of beneficiary form?

"*A.* That seemed the trend of thought — conversation went on for a half hour, and then various attempts were made to try to get the patient in a position so that he could sign the card; but whether he didn't have physical strength to make the attempt to sign, or whether he was refusing to sign, is a hard thing to interpret.

"*Q.* The fact is that it took a half hour before he did make any cross on the card?

"*A.* Yes.

"*Q.* And did he finally make a cross on this card?

"*A.* Well, that is another thing. The physical cross was made in this manner: He finally propped him up a little ways in the bed and Mr. Way—George Way—that would be Lewis Way, took the pencil and put it in George Way's hand. Put his hand up, and whether I held the card or he did, I don't remember who held the card up; then he didn't have quite enough strength to put the "X" down, so Mr. Lewis Way had hold of his elbow, here, and pushed his elbow so that he could make the cross, and he still didn't do a very good job on the "X", so I wrote another card.

"*Q.* During that time did Mr. Way shake—nod his head from side to side, in duplication, when Lewis Way asked him to sign this change of beneficiary?

"*A.* He didn't move at all. He would pause. That is another thing—he didn't have the strength to shake his head; he couldn't move; he was just rigid."

The witness further testified that he took the card, exhibit C, with him and that he left another card, prepared for execution by the insured, "if he should come back and have a little more strength and if he wanted to sign the card." It is apparent from the testimony of Mr. Ruen that George Way was very

feeble, physically, at the time of the alleged execution of exhibit C.  His testimony, however, fails to establish that the insured was at the time unaware of the nature of the transaction.  In that connection the following answer of the witness to a question propounded to him is significant.

"He would make an effort to sign the card, but then he would back away from the card.  Whether that meant he wasn't physically able or—"

The witness further indicated that he was unable to determine whether or not George Way wished to sign the card.  Appellant testifying in his own behalf stated that during the time Mr. Ruen was in the room with the patient, the latter was being fed intravenously, and that his arms were strapped to the side of the bed to limit movement on his part.  This testimony is not directly contradicted by Mr. Ruen, the latter indicating that he did not know whether George Way was then being fed, although he observed a bottle and a tube.  Appellant's further testimony as to what occurred would indicate that his brother understood what was said to him and that he responded to a certain extent, that he realized the nature of the transaction in question, and that he was not as feeble, either mentally or physically, as the testimony of Mr. Ruen indicates.

Appellant relies principally on exhibit D which is claimed to have been executed by George Way between 2 and 3 o'clock in the afternoon of December 31st.  It is claimed that at that time the insured was in full possession of his mental faculties and was able to converse intelligently.  To establish such fact appellant offered the testimony of Mrs. Margaret Foster, his sister-in-law, who testified in substance that she went to the room of George Way

in the hospital about 2 o'clock in the afternoon of the day in question, that she talked with the patient, that the latter conversed understandingly, that he made his mark on exhibit D, and that she witnessed it at the request of appellant. The latter corroborated the testimony of Mrs. Foster, but with less detail. He further claimed that Mr. Ruen came to the hospital about 11 o'clock in the forenoon. If this was correct then exhibit D was actually executed approximately two and a half hours after the alleged execution of exhibit C. Mr. Ruen was somewhat uncertain as to the exact time he arrived at the hospital, but thought it was about 2 o'clock in the afternoon. However, he did not claim that he saw Mrs. Foster in the room of George Way. The conclusion follows necessarily that he was there at an earlier hour. Following its execution exhibit D was delivered to the plaintiff by appellant.

Mrs. Foster further testified that several days preceding December 31, 1943, George Way had indicated that he wished to change the beneficiary under the certificate of insurance, and that he requested the appellant to procure the certificate from the grandparents of the appellee and bring it to the hospital. The record indicates in this connection that the hospital authorities had taken an assignment from the patient covering charges for care and attendance and that they wished to see the certificate. It further appears that appellant went to the home of Mr. and Mrs. Daugherty, the grandparents of appellee, told them that his brother wanted the certificate in order that he might comply with the request, and that it was delivered to appellant. Some emphasis is placed by appellee on the testimony of Mrs. Daugherty to the effect that she sent a carton of cigarettes to George Way by appellant at the time of the delivery of the certificate

of insurance and that, on January 2d, she discussed the matter with appellant and his wife, being told by the latter that the cigarettes were not delivered because George Way was unconscious. There is, however, nothing in the record to indicate when, if at all, the cigarettes were taken to the insured. According to the testimony of both Mr. and Mrs. Daugherty appellant came to their home for the certificate of insurance during the evening of December 31st, after the execution of exhibits C and D. Appellant thought that he made his visit to the Daugherty home on the Wednesday evening preceding, but the testimony of appellee's witnesses indicates that this was not correct and that actually the incident with reference to the cigarettes occurred after the exhibits in question are claimed to have been executed.

The testimony of appellant and of his witness Mrs. Foster, if believed, establishes that the insured had sufficient mental capacity at the time exhibit D was executed to realize fully the nature of the transaction. Such testimony is not directly contradicted by appellee's proofs. It does not appear that Mrs. Foster had any financial interest in the outcome of the case, nor does the record indicate any sufficient reason to justify the rejection of the testimony given by her on the trial. Neither, on the record before us, are we justified in rejecting the testimony of the appellant.

Undoubtedly the hospital attendants were familiar with the patient's condition but none of them was called as a witness; nor is there any proof before us as to the nature of the ailment from which George Way was suffering at the time of the transaction in question. The application for the certificate of insurance stated his date of birth as November 18, 1879. If this was correct he was

64 years of age at the time of his death. No claim is made that he was enfeebled, physically or mentally, because of his age. In the absence of proof as to the nature of his illness it may not be assumed that his condition became suddenly and uniformly worse in his last days, without intervals of increased physical and mental vitality. It must be said further that the testimony of Mr. Ruen with reference to the insured's condition, when the witness was at the hospital and exhibit C was executed, does not clearly indicate mental incompetency. On the contrary it is a fair conclusion from all of the testimony given by this witness that the insured was capable of understanding the nature of the transaction, and that the uncertainty on the part of the witness resulted from his inability to determine whether George Way was physically unable to sign or whether his delay in doing so indicated a reluctance to change the beneficiary under his insurance certificate. Mere physical weakness or debility on his part was not sufficient to vitiate his act if he had sufficient intelligence to understand the transaction. 17 C. J. S. p. 480; *Page* v. *Prudential Life Insurance Company of America,* 12 Wash. (2d) 101 (120 Pac. [2d] 527). The question is one of mental competency. On the basis of the evidence before us we think it must be said that appellee has failed to sustain the burden of proof resting on her.

The claim on behalf of appellee that the insured executed the change of beneficiary because of fraud and undue influence exerted against him does not call for extended discussion. As before pointed out, the testimony given by appellant and by his witness, Mrs. Foster, as to what occurred at the time exhibit D was executed is not disputed. There is nothing to indicate that any deception was practiced on

George Way, or that he was subjected to influence of a character calculated to overcome his own will and mind. Mere opportunity to exert undue influence is not sufficient. *In re Alvord's Estate,* 258 Mich. 497; *In re Burwitz's Estate,* 272 Mich. 16. The testimony of Mr. Ruen as to statements made by appellant to George Way prior to the time that the latter placed his mark on exhibit C does not indicate either fraud or undue influence at that time. The only justifiable conclusion is that appellant sought to persuade his brother to execute the change of beneficiary. It does not appear, however, that anything was said or done that could have had the effect of overcoming the will of the insured. Mere persuasion, not amounting to undue influence, is not sufficient to vitiate a transaction of this nature. *In re Teller's Estate,* 288 Mich. 193; *In re Balk's Estate,* 298 Mich. 303. Neither fraud nor undue influence are shown by the proofs in the instant case.

Under the facts of the case it can not be said that the change in beneficiary from appellee to appellant was an unnatural act. For some time prior to his removal to the hospital, the insured lived in the home of appellant. The uncontradicted testimony of appellant's witness, Mrs. Ann Sesson, indicates that the insured felt very friendly toward appellant and appellant's wife, and that he stated, in substance, that they had been very good to him. Doubtless he entertained a very kindly feeling toward appellee, but the latter was not a natural recipient of his bounty.

The record indicates the claim was made in the trial court on behalf of appellee that the Chrysler Corporation did not approve the change in beneficiary and that the omission to do so rendered such

change ineffective under the terms of the group policy. However, counsel for appellee does not raise the question in his brief and we may assume that he has abandoned it. *Wilkinson* v. *Lanterman,* 314 Mich. 568. In any event it is evident that the insured did all that he was required to do to effect the change, and failure on the part of the employer to give formal approval can not vitiate his act. *Supreme Court, Independent Order of Foresters* v. *Frise,* 183 Mich. 186; *Equitable Life Assurance Society of the United States* v. *Hitchcock,* 270 Mich. 72 (106 A. L. R. 591). Plaintiff alleges in its bill of complaint that such approval was withheld solely because of the conflicting claims of appellant and appellee. No other reason is suggested for the failure of the Chrysler Corporation to approve the change in beneficiary.

Under the evidence in the case appellant is entitled to the balance of the proceeds of the certificate of insurance issued to his brother. The decree of the trial court is vacated, and a decree will enter in this Court in accordance with the foregoing opinion, with costs to appellant.

Butzel, Bushnell, Sharpe, Boyles, Reid, North, and Dethmers, JJ., concurred.