## POTTER *v.* CHAMBERLIN.

1. EQUITY—SETTING ASIDE TRANSFERS OF PROPERTY—MENTAL COMPETENCY OF GRANTOR—UNDUE INFLUENCE.

   The primary question in a suit to set aside transfers of real and personal property which had been made by plaintiff's decedent, an elderly woman, to defendants who had taken care of her after the death of her husband, is whether she had sufficient mental capacity to understand the nature of the transactions respecting her property, to know the value and extent of such property, to reach a logical conclusion as to how she wished to dispose of it, and to keep such facts in mind for a sufficient length of time to permit the necessary planning and effectuating of her wishes without prompting and interference from others.

2. SAME—MENTAL COMPETENCY OF GRANTOR—FINDINGS—EVIDENCE.

   Finding of trial judge that plaintiff's decedent, an elderly widow, was not mentally incompetent to determine for herself what she wished to do with her property and to understand fully the nature of the transactions in which she engaged when transferring her property to defendants, nonrelatives, who were then taking care of her *held,* fully justified under record presented.

3. SAME—TRANSFER OF PROPERTY—BURDEN OF PROOF—MENTAL COMPETENCY.

   The burden of proof of showing mental incompetency to execute a transfer of property is upon the party asserting such incompetency on the part of the transferor.

REFERENCES FOR POINTS IN HEADNOTES

[1] 16 Am Jur, Deeds § 85; 28 Am Jur, Insane and Other Incompetent Persons § 55.
[2–4] 16 Am Jur, Deeds §§ 371–375; 28 Am Jur, Insane and Other Incompetent Persons § 123.
[5, 7] 16 Am Jur, Deeds § 392; 28 Am Jur, Insane and Other Incompetent Persons §§ 90, 91.
[6] 23 Am Jur, Fraud and Deceit § 14.
[8] 7 Am Jur, Banks § 425 *et seq.*
[8] Gift or trust by deposit of funds belonging to depositor in bank account in name of himself and another. 48 ALR 189; 66 ALR 881; 103 ALR 1123; 135 ALR 993; 149 ALR 879.
[9, 10] 16 Am Jur, Deeds §§ 43–45; 19 Am Jur, Equity § 57; 45 Am Jur, Reformation of Instruments § 55.

4. Same—Transfer of Property—Mental Competency—Burden of Proof.

Plaintiff, administrator of estate of elderly widow, *held,* not to have sustained his burden of proof as to her mental incompetency to make transfers of her property at time they were made to defendants, nonrelatives, who were then taking care of her.

5. Same—Transfers of Property—Undue Influence—Evidence—Opportunity.

Inference that defendants had exercised undue influence upon elderly widow to whom they were not related, as a result of which she executed conveyances of her property to them while they were caring for her, *held,* not to be properly drawn from any testimony in record presented in suit by administrator of her estate to set aside such transactions, mere opportunity to exert undue influence not being sufficient.

6. Words and Phrases—Fiduciary.

The word "fiduciary" implies a relationship that exists when there is a reposing of faith, confidence and trust and the placing of reliance by one upon the judgment and advice of another.

7. Equity—Transfer of Property—Undue Influence—Evidence—Opportunity.

The fact that defendants and plaintiff administrator's decedent, an elderly widow, occupied the same house for a period of approximately 2 years and 9 months immediately preceding her death, when taken together with the fact decedent apparently had confidence in her own judgment and in her ability to handle her affairs as evidenced by transactions whereby she insured the retention of sufficient property interests to render certain her support and maintenance as long as she might live, did not effect a fiduciary relationship on the part of defendants so as to raise the rebuttable presumption arising in case such relationship is shown, mere opportunity not being sufficient.

8. Banks and Banking—Joint Accounts—Presumption of Survivor's Ownership—Evidence.

Plaintiff, administrator of estate of elderly widow, *held,* not to have overcome statutory presumption of ownership in survivor of bank account, where record indicates decedent had given her bank account such status pursuant to her purpose of assisting defendants, nonrelatives, who were then caring for her in her own home, rather than leave her property to others (CL 1948, § 487.703).

9. REFORMATION OF INSTRUMENTS—MUTUAL MISTAKE.

  Reformation of a conveyance of property, or other instrument in writing, may be granted by a court of equity on the ground of mutual mistake.

10. SAME—DEEDS—MUTUAL MISTAKE—EVIDENCE.

  Evidence presented in behalf of cross plaintiff for reformation of deed which embraced property grantor, an elderly widow now deceased, had previously sold to defendants with whom she lived *held*, to sustain factual finding justifying relief sought as to remaining property grantor then owned on ground of mutual mistake.

Appeal from Berrien; McDonald (Archie D.), J., presiding. Submitted October 12, 1955. (Docket No. 34, Calendar No. 46,249.) Decided December 28, 1955.

Bill by T. O. Potter, administrator of the estate of Fannie B. Drake, deceased, against Lucile Chamberlin and Raymond P. Chamberlin for accounting, cancellation of deeds and other relief. Cross bill for correction of description in deed. Decree for defendants. Plaintiff appeals. Affirmed.

*Thomas N. Robinson, Jr.,* and *Victor E. Bucknell,* for plaintiff.

*Gore & Williams (Charles W. Gore,* of counsel), for defendants.

CARR, C. J. Plaintiff, as administrator of the estate of Fannie B. Drake, deceased, brought this suit in circuit court to obtain injunctive relief, an accounting, and the cancellation of certain conveyances of real property. Mrs. Drake died on September 29, 1952, at the age of 84. Her husband predeceased her, passing away in November, 1949. For a few weeks following his death she lived

alone in the home that the parties had occupied. Attempts to procure someone to live with her and take care of her physical needs did not at first meet with success. Finally, however, she arranged with defendants to take her into their home, furnish her board and room, and render to her such care as she might need.

The parties began to live together on January 6, 1950. At that time Mrs. Drake was the owner of about 29-1/2 acres of land, on which her home was situated. After a short period in defendants' home she resumed her residence there, defendants living with her. She entered into a written contract with them for her care, it being agreed between the parties at the time that the home and the 5 acres of land on which it was located would be conveyed to them. A deed of such property was executed on September 22, 1950.

In May, 1951, Mrs. Drake executed to defendants a land contract for the sale to them of an additional 10 acres of land for a stated consideration of $9,600. Annual payments were provided for, to be made until the death of Mrs. Drake. A deed of said property was executed and deposited in escrow, with the understanding that it would be delivered to defendants, and the contract considered fully paid, on her death. On October 5th, following, an additional parcel, comprising approximately 10 acres, was made, through mesne conveyances, the property of Mrs. Drake and defendant Lucile Chamberlin as joint tenants. Like action was taken with reference to 5 acres which had previously been included in the land contract executed to defendants on May 1, 1951. It was the claim of the defendants that it was the intention of the parties that the conveyance should cover the remaining land of Mrs. Drake and that the description was erroneous. Pursuant to such claim they

filed a cross bill in the suit asking reformation of the deeds.

It also appears that Mrs. Drake, in the spring or early summer of 1951, changed her bank account from her own name to the names of herself and defendant Lucile Chamberlin jointly, payable to either or survivor, and that she also signed an agreement in writing to the effect that any moneys received from the State highway department for taking her property in the location of a highway should, if not paid during her lifetime, go directly to defendants. It also appears that she gave to defendants, or to Mrs. Chamberlin, some items of personal property.

On the trial of the case in circuit court it was the claim of the plaintiff that at the time of the transactions, above enumerated, Mrs. Drake was mentally incompetent to enter into business transactions of the character involved, and that defendants exercised undue influence over her in obtaining the conveyances and agreements in question. After listening to the proofs of the parties, the trial judge came to the conclusion that plaintiff had not established his right to the relief sought and entered a decree dismissing the bill of complaint. The judge further determined that a mutual mistake had been made in the description of 5 acres of land in the attempted conveyances thereof and that defendants and cross plaintiffs were entitled to have the reformation sought. From the decree entered, plaintiff has appealed.

The proofs taken in the circuit court indicate conclusively that Mrs. Drake was very well satisfied with the care and attention given to her by defendants and expressed to others her appreciation of their kindness. It further appears that her only son had died some years previously, leaving a daughter, and that his widow had remarried. This

daughter, who was the sole heir of Mrs. Drake, was approximately 16 years of age at the time of the latter's death and had resided in an eastern State for a number of years. There is testimony of statements made by Mrs. Drake indicating dislike for her former daughter-in-law, and a feeling on her part that she had been neglected by her relatives and friends. It may not be said on this record that there was no basis for such feeling. It is a matter of inference that this situation caused her to appreciate the care and attention given her by defendants to a greater extent than she otherwise would have done. Such attitude on her part may not be regarded as indicating a lack of mental capacity to transact business affairs.

Obviously Mrs. Drake felt kindly toward defendants and desired to assist them. She had the right to dispose of her property as she saw fit, assuming that she was competent to do so and was not subjected to undue influences. The primary question is whether she had sufficient mental capacity to understand the nature of the transactions respecting her property, to know the value and extent of such property, to reach a logical conclusion as to how she wished to dispose of it, and to keep such facts in mind for a sufficient length of time to permit the necessary planning and effectuating of her wishes without prompting and interference from others. *Hayman* v. *Wakeham,* 133 Mich 363; *Barrett* v. *Swisher,* 324 Mich 638; *Knight* v. *Behringer,* 329 Mich 24; *Wroblewski* v. *Wroblewski,* 329 Mich 61.

Witnesses produced by plaintiff on the trial testified that, following the death of her husband, Mrs. Drake was depressed, that at times she seemed somewhat absent-minded, that she did not display the friendly spirit toward certain neighbors that she had shown in prior years, and that she was sub-

ject to physical infirmities usually incident to one of her age. On behalf of defendants, 3 physicians who had attended Mrs. Drake at different times gave testimony to the effect that she was mentally alert and was, in the opinion of each, fully competent to engage in business transactions of the character involved in the case. This testimony was corroborated by lay witnesses who had come in contact with Mrs. Drake and had opportunities to observe her conduct. Without discussing the proofs in detail, we think the record made before him fully justified the finding of the trial judge that Mrs. Drake was not, on the occasions in question, mentally incompetent to determine for herself what she wished to do with her property and to understand fully the nature of the transactions in which she engaged.

On the issue of mental competency the burden of proof was on the plaintiff. *Shea* v. *Siller,* 262 Mich 279; *Chrysler Corporation* v. *Nohmer,* 319 Mich 153. On the record before us it must be said that plaintiff did not sustain such burden. Decisions cited by appellant, including *Hemphill* v. *Holford,* 88 Mich 293; and *Sprenger* v. *Sprenger,* 298 Mich 551, 561, in which this Court held on the basis of the facts appearing from the record that mental incompetency had been shown, are not in point in view of the proofs in the instant case.

There is no testimony in the record from which an inference may properly be drawn that defendants exercised undue influence over Mrs. Drake, as a result of which she executed the conveyances in question. There is no showing that the transactions between the parties involving property were not the result of Mrs. Drake's voluntary acts, consummated pursuant to her plans and her wishes. Mere opportunity to exert undue influence is not sufficient. *In re Alvord's Estate,* 258 Mich 497;

*In re Estate of Burwitz,* 272 Mich 16; *Chrysler Corporation* v. *Nohmer, supra.*

Counsel for plaintiff suggests in their brief that the relationship between defendants and Mrs. Drake was analogous to that of guardian and ward and, therefore, fiduciary in character. Based on such premise it is argued, in effect, that the burden of proof rested on defendants to establish affirmatively that no undue influence was, in fact, exerted by them. The following statement made in the opinion of this Court in *In re Jennings' Estate,* 335 Mich 241, 244, is applicable here:

"We think the term should be held to mean what the word 'fiduciary' implies and that the relationship exists only when there is a reposing of faith, confidence and trust and the placing of reliance by one upon the judgment and advice of another. No such situation was established here."

The record in the case at bar contains no proof that Mrs. Drake relied on the advice and judgment of defendants in business matters. Apparently she had confidence in her own judgment and in her ability to handle her affairs. The transactions in question were made in such form as to insure that she would retain sufficient property interests to render certain her support and maintenance as long as she might live. Unquestionably she found defendants congenial and she appreciated the services that they furnished to her, but such situation did not render the relationship a fiduciary one. In consequence we are not confronted with the rebuttable presumption arising in cases where such relationship is affirmatively shown. The facts in this respect are not analogous to those involved in *Wroblewski* v. *Wroblewski, supra.* The fact that the parties in this case occupied the same house for a period of approximately 2 years and 9 months

does not justify an inference that there was a fiduciary relationship, or that there was undue influence exerted against Mrs. Drake. As before stated, mere opportunity is not sufficient. *In re Cottrell's Estate,* 235 Mich 627, 631; *Knight* v. *Behringer, supra.*

The conclusions indicated with reference to the real property transactions apply also to the gifts of personal property and to the joint bank account. What Mrs. Drake did in these matters was consistent with her general purpose, evidenced by her conduct, to assist defendants rather than to leave her property to others. Insofar as the bank account is concerned, it must be said that the statutory presumption of ownership in the survivor* was not overcome by plaintiff. *Jakobowski* v. *Bacalia,* 314 Mich 678.

Appellant further contends that the trial court was in error in granting relief to defendants on their cross bill. The power of a court of equity to grant relief by way of reformation of a conveyance of property, or other instrument in writing, on the ground of mutual mistake is not open to question. *Gustin* v. *McKay,* 196 Mich 131; *Jaerling* v. *Longsdorf,* 254 Mich 558; *Maki* v. *Karvonen,* 322 Mich 696. The issue presented here is one of fact. It is claimed that there was insufficient proof to show a mutual mistake in the drawing of the deeds describing the 5 acres of land above mentioned. It is a fair inference, however, that the parties did not intend to describe a parcel embraced within the description contained in the conveyance previously executed. It is apparent that Mrs. Drake had in mind disposing of all her real estate by instruments of conveyance effective either during her lifetime or at her death. The conclusion is fully

---

* See CL 1948, § 487.703 (Stat Ann 1943 Rev § 23.303).—Reporter.

justified that the scrivener in preparing the deed made a mistake in the location of the 5-acre parcel, and that such mistake was not discovered until later. The evidence in the case supports the factual finding on which the granting of relief to cross plaintiff was based.

We find that the trial judge correctly disposed of the issues in the case and the decree entered is affirmed. Defendants may have costs.

BUTZEL, SMITH, SHARPE, BOYLES, REID, DETHMERS, and KELLY, JJ., concurred.