## JAYAKAR v NORTH DETROIT GENERAL HOSPITAL

Docket No. 108673. Submitted August 2, 1989, at Detroit. Decided
     September 8, 1989.

Gandam Samuel Jayakar, M.D., a member of the emergency
     room staff at North Detroit General Hospital, treated a minor
     child, Thomas Malek. Subsequent to the treatment, and alleg-
     edly because of a failure of Dr. Jayakar to diagnose a diabetic
     condition, the child suffered serious injuries. A malpractice suit
     was filed against Dr. Jayakar and the hospital on behalf of the
     child. Argonaut Insurance Company, the hospital's insurer,
     undertook the defense of the hospital and Dr. Jayakar. Argo-
     naut subsequently settled the case for $2,200,000 without the
     knowledge or consent of Dr. Jayakar. Dr. Jayakar allegedly
     learned of the settlement through newspaper articles and radio
     broadcasts, in which he was named as the party responsible for
     the child's injuries. Dr. Jayakar, together with his wife and
     children, filed suit against North Detroit General Hospital and
     Argonaut Insurance Company in Wayne Circuit Court alleging
     breaches of fiduciary and contractual duties which resulted in
     adverse publicity, emotional trauma, depression, embarrass-
     ment, humiliation, and economic loss. Defendants moved for
     summary disposition, which the court, Phillip J. Jourdan, J.,
     granted. Plaintiffs appealed.

The Court of Appeals *held:*

1. Dr. Jayakar failed to establish the existence of an issue of
     material fact as to the fiduciary relationship alleged to have
     existed between him and defendant hospital. There is no evi-
     dence that Dr. Jayakar relied upon the advice and judgment of
     the hospital, necessary elements of a fiduciary relationship.

2. The trial court did not err by holding that there was no
     causal link between plaintiffs' damages and the conduct of the
     hospital. There is no proof that the damages sought by plain-
     tiffs were the direct, natural and proximate result of the
     alleged breach of contract.

3. Plaintiffs' argument that Argonaut had an obligation to

REFERENCES

Am Jur 2d, Insurance §§ 271, 1399, 1400, 1451.
See the Index to Annotations under Compromise and Settlement;
     Insurance; Libel and Slander.

obtain Dr. Jayakar's consent before settling the case is without merit. Under the terms of the insurance contract, the power to consent to a settlement vests only in the hospital, the named insured. Furthermore, even if Dr. Jayakar were entitled to a right to disapprove any settlement, his conduct throughout the litigation of the underlying action was such that he would have waived that right.

4. Plaintiffs' contention that Argonaut's failure to obtain Dr. Jayakar's consent to the settlement resulted in defamatory media reports is also without merit.

Affirmed.

1. WORDS AND PHRASES — FIDUCIARY.

The term "fiduciary" implies a relationship that exists when there is confidence, faith and trust and the placement of reliance by one upon the judgment and advice of another.

2. INSURANCE — JUDICIAL CONSTRUCTION.

Construction of an insurance contract containing unambiguous language is a question of law for the court.

3. INSURANCE — JUDICIAL CONSTRUCTION.

Whether an ambiguity exists in an insurance contract is a question for the court, which may consider extrinsic facts; the language of the contract will be construed with reference to the parties' relations and the type of property insured, and the language used and the context will be looked to in determining the purpose sought to be achieved; the language will be given its ordinary and plain meaning, rather than a technical or a strained construction.

*Wayne G. Wegner,* for plaintiffs.

*Kasiborski, Ronayne & Flaska, P.C.* (by *Chester E. Kasiborski, Jr.*), for North Detroit General Hospital.

*Plunkett & Cooney, P.C.* (by *Robert G. Kamenec*), for Argonaut Insurance Company.

Before: SULLIVAN, P.J., and BRENNAN and N. J. KAUFMAN,* JJ.

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

PER CURIAM. Plaintiffs appeal as of right from the circuit court's orders for summary disposition in favor of defendants. We affirm.

The points of error raised by plaintiffs on appeal can be disposed of rather briefly.

Dr. Jayakar failed to establish the existence of an issue of material fact as to the fiduciary relationship alleged to have existed between him and defendant hospital. The term "fiduciary" implies a relationship that exists when there is confidence, faith and trust and the placement of reliance by one upon the judgment and advice of another. *Potter v Chamberlin*, 344 Mich 399, 406; 73 NW2d 844 (1955). The record before us contains no evidence that Dr. Jayakar relied upon the advice and judgment of defendant hospital.

The trial court did not err by holding that there was no causal link between plaintiffs' damages and the conduct of defendant hospital. There is no proof that the damages sought by plaintiffs were the direct, natural and proximate result of the alleged breach of contract. *Sattler v Fisher Contracting Co*, 30 Mich App 617, 622; 186 NW2d 875 (1971). Plaintiffs seek to recover damages which resulted from the inaccurate reporting of the case by the media, not from defendant's conduct. Plaintiffs' remedy lies not against defendant hospital, but against the parties who defamed Dr. Jayakar.

Plaintiffs' argument that defendant Argonaut had an obligation to obtain Dr. Jayakar's consent before settling the case is meritless.

An insurance contract must be construed in accordance with the following rules:

> Construction of an insurance contract containing unambiguous language is a question of law for the court. *Auto Club Ins Ass'n v Page*, 162 Mich App 664, 667; 413 NW2d 472 (1987). Whether an ambi-

guity exists in an insurance contract is a question for the court which may consider extrinsic facts. *Mayer v Auto-Owners Ins Co,* 127 Mich App 23; 338 NW2d 407 (1983). The language of an insurance contract will be construed with reference to the party's relations and the type of property insured. *Boyd v General Motors Acceptance Corp,* 162 Mich App 446, 452; 413 NW2d 683 (1987). We look to the language used and the context to determine the purpose sought to be achieved. *Id.* The contract language will be given its ordinary and plain meaning, rather than a technical or a strained construction. *Id.* [*Jones v Farm Bureau Mutual Ins Co,* 172 Mich App 24, 27; 431 NW2d 242 (1988).]

The insurance contract provides in relevant part:

It is agreed that the unqualified word "insured" also includes (1) any employee or authorized volunteer worker of the named insured while acting within the scope of his duties as such.

\* \* \*

. . . [T]he company shall have the right and duty to defend any suit against the Insured seeking such damages, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and, with the written consent of the Insured, such settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

Argonaut was not required to seek Dr. Jayakar's consent before settling the action. In reviewing the language of the contract and the context in which it is used, we conclude that defendant hospital sought to insure members of its medical staff while giving Argonaut broad authority to defend defen-

dant hospital and its employees. Plaintiffs' construction would virtually paralyze Argonaut in its efforts to fulfill its contractual duty to defend. Taking plaintiffs' construction of the contract to its logical extreme, any employee or volunteer of defendant hospital who might be named as a defendant in a lawsuit that falls within the coverage afforded by the insurance contract would have the unbridled power to preclude settlement. The correct interpretation of the insurance contract is that when a claim is filed against an additional insured and defendant hospital, the power to consent to a settlement vests only in defendant hospital as the named insured.

Even if plaintiffs' construction of the insurance contract was correct, we would nevertheless hold that plaintiffs are estopped to deny the authority of defendant hospital to consent to the settlement of the action. Dr. Jayakar's conduct throughout the litigation of the underlying action was such that he waived any right to disapprove of the settlement.

Plaintiffs' argument that Argonaut's failure to obtain Dr. Jayakar's consent to the settlement resulted in defamatory media reports is also meritless. Consistent with our views set forth above, we reiterate our conclusion that Argonaut did not have to obtain Dr. Jayakar's consent in order to settle the underlying action. Even if Argonaut did have such an obligation under the contract and breached it, there is no evidence to suggest that plaintiffs' damages were proximately caused by the breach.

We have reviewed plaintiffs' remaining allegations of error and conclude that they do not merit review.

The orders for summary disposition are affirmed.