WILSON v HOME OWNERS MUTUAL INSURANCE COMPANY

Docket No. 80689. Submitted October 1, 1985, at Grand Rapids.—
Decided January 22, 1986. Leave to appeal applied for.

A store owned by the plaintiffs, Andrew Wilson and Betty Wilson,
was completely destroyed by fire when a customer backed her
automobile through the side of the store building. Plaintiffs
thereafter brought an action in the Missaukee Circuit Court
against defendant Home Owners Mutual Insurance Company,
plaintiffs' property insurer, and defendant United States Fidel-
ity & Guaranty Company, the customer's no-fault insurer, for
damages from the loss of the store. Prior to trial, plaintiffs
settled their claim against Fidelity. Home Owners brought a
cross-complaint against Fidelity on September 7, 1983, alleging
that it brought the suit individually and as subrogee of Chemi-
cal Bank of Lake City to which it had paid $12,138.49, said
amount representing its subrogor's damages sustained as a
proximate result of the fire loss. Chemical Bank, the mortgagee
upon the fire insurance policy, had filed an independent claim
against Home Owners for the outstanding mortgage balance on
the store property at the time of the loss. The claim was settled
for $12,138.49, and Home Owners took an assignment of the
mortgagee's interest on July 5, 1983. The trial court, William
R. Peterson, J., granted a directed verdict in favor of Fidelity
on Home Owner's cross-complaint. The trial court reasoned
that by taking an assignment of the mortgagee's interest,
Home Owners had made an election, pursuant to MCL
500.2832(1), and was barred from pursuing any available rem-
edy it could have pursued if it merely had been subrogated to
the mortgagee's rights. The jury returned a verdict in plaintiffs'
favor on the issue of damages. Home Owners appeals as of
right from the order denying its motion to set aside the
directed verdict. *Held:*

    1. The language of the Michigan Standard Policy involved

REFERENCES

Am Jur 2d, Insurance §§ 269-311, 1794-1830.

Am Jur 2d, Trial §§ 319-346.

Construction and application of provision in liability policy limiting
the amount of insurer's liability to one person. 35 ALR3d 792.

Liability of insurance agent, for·exposure of insurer to liability,
because of failure to cancel or reduce risk. 13 ALR3d 1228.

here permits an insurer to choose between pursuit of its rights as a subrogee of a mortgagee or to pursue its rights as an assignee of the mortgagee. It does not allow both.

2. The Court of Appeals rejected Home Owners' argument that a right of subrogation exists under the contract by virtue of a subrogation paragraph added to the language of the standard policy. The paragraph conflicts with the clear intent expressed by the language of the standard policy that an insurer elect between its remedies as a subrogee and its remedies as an assignee of the mortgage.

3. The Court of Appeals rejected Home Owners' claim that lines 78 to 83 of the standard policy apply only to a mortgagee's right of recovery against the mortgagor. The lines expressly provide that the company shall be subrogated to all the mortgagee's rights of recovery, without limiting the rights of recovery to those against a mortgagor.

4. The election required by the standard policy, MCL 500.2832(1), applies only if the insurer claims that no liability exists as to the mortgagor or owner (e.g., the mortgagor or owner is not blameless).

5. The construction of lines 78 to 83 of the standard policy adopted by the Court of Appeals in this action does not give rise to a conflict with the language contained in lines 162 to 165 of the standard policy.

6. It is not improper, under the circumstances presented here, to require an insurer to elect between pursuing its rights as a subrogee and its rights as an assignee.

Affirmed.

1. Trial — Directed Verdict — Questions of Fact.

A trial court may not direct a verdict whenever a fact question exists upon which reasonable persons may differ; a directed verdict may be granted where no factual questions are disputed or in a case where a question of law will be dispositive regardless of the outcome of disputed factual questions.

2. Contracts — Judicial Construction — Questions of Law.

The contruction of a contract is a question of law for the trial court's determination where there is no ambiguity in the contract language.

3. Insurance — Michigan Standard Policy — Judicial Construction.

The language contained in a Michigan Standard Policy of insurance is to be construed with reference to the parties' relations

and the type of property insured; courts will look to the language used and the context to determine the purpose sought to be achieved; the contract language will be given its ordinary and plain meaning, rather than a technical or a strained construction (MCL 500.2806; MSA 24.12806).

4. INSURANCE — MICHIGAN STANDARD POLICY — SUBROGEES — ASSIGNEES — ELECTION OF RIGHTS — WAIVER.

A Michigan Standard Policy provision providing that if the insurance company "shall claim that no liability existed as to the mortgagor or owner, it shall, to the extent of payment of loss to the mortgagee, be subrogated to all the mortgagee's rights of recovery, but without impairing mortgagee's right to sue; or it may pay off the mortgage debt and require an assignment thereof and of the mortgage" permits an insurer to choose between pursuit of its rights as a subrogee or as an assignee of the mortgagee; the insurer may not pursue both rights; the provision does not apply only to a mortgagee's right of recovery against the mortgagor (MCL 500.2832[1]; MSA 24.12832[1]).

*Denton & Denton* (by *John L. Denton*), for Andrew and Betty Wilson.

*Denenberg, Tuffley, Thorpe, Bocan & Patrick* (by *Ronald G. Musto*), and *Denton & Denton* (by *John L. Denton*), co-counsel for United States Fidelity & Guaranty Company.

*Peter C. Payette, P.C.* (by *Peter C. Payette*), for Home Owners Mutual Insurance Company.

Before: DANHOF, C.J., and MACKENZIE and J. L. BANKS,* JJ.

PER CURIAM. Defendant Home Owners Mutual Insurance Company (hereafter Home Owners) appeals as of right from the lower court's September 11, 1984, order denying its motion to set aside a directed verdict. The lower court had granted a directed verdict in favor of defendant United

---

* Circuit judge, sitting on the Court of Appeals by assignment.

States Fidelity & Guaranty Company (hereafter Fidelity) on Home Owner's cross-complaint.

This appeal requires us to construe the language contained in the fire insurance policy issued by Home Owners to plaintiffs and required by the Michigan Standard Policy form statute, MCL 500.2832(1); MSA 24.12832(1), which provides:

> "If this Company shall claim that no liability existed as to the mortgagor or owner, it shall, to the extent of payment of loss to the mortgagee, be subrogated to all the mortgagee's rights of recovery, but without impairing mortgagee's right to sue; or it may pay off the mortgage debt and require an assignment thereof and of the mortgage." (standard policy lines 78-83).

The trial court ruled that the above contractual language barred Home Owner's cross-claim. The trial court reasoned that by taking an assignment of the mortgagee's interest, Home Owners had made an election and was barred from pursuing any available remedy it could have pursued if it merely had been subrogated to the mortgagee's rights. We affirm.

On November 28, 1982, plaintiffs' store was completely destroyed by fire when a customer backed her automobile through the side of the store building. On April 25, 1983, plaintiffs sued Home Owners, their property insurer, and Fidelity, the customer's no-fault insurer, for damages from the loss of the store. Count I of plaintiffs' complaint, a breach of contract claim, alleged that despite plaintiffs' compliance with the insurance policy, Home Owners refused to pay benefits. Home Owners denied liability, stating that plaintiffs intentionally caused the fire to occur in order to defraud it. Count II of plaintiffs' complaint alleged that the customer negligently caused the fire, that Fidelity was her no-fault insurer, and

that, nonetheless, Fidelity refused to pay the property damage claim. Fidelity answered that the fire was the result of a known, intentional and wilful act of its insured, acting alone and/or in conjunction with plaintiffs, and thus, Fidelity was not liable under the no-fault policy. Prior to trial, plaintiffs settled their claim against Fidelity for approximately $70,000 and Count II was dismissed.

In its September 7, 1983, cross-complaint against Fidelity, Home Owners alleged that it "brings this suit individually and as subrogee of Chemical Bank of Lake City to which it has paid the sum of Twelve Thousand One Hundred Thirty-Eight and 49/100 ($12,138.49) Dollars, said amount representing its subrogor's damages sustained as a proximate result of the fire loss". The mortgagee upon the fire insurance policy, Chemical Bank of Lake City, had filed an independent claim against Home Owners for the outstanding mortgage balance on the store property at the time of the loss. This claim was eventually settled for $12,138.49, an amount determined by negotiation. According to the testimony of Robert Brooks, Home Owners took an assignment of the mortgagee's interest on July 5, 1983. At the jury trial of this matter, counsel for Home Owners decided not to present any proofs of the arson defense against plaintiffs and limited litigation of plaintiffs' claim to the issue of damages. Proofs were also offered on the cross-claim. At the close of Home Owners' proofs, the trial court granted Fidelity's motion for a directed verdict. The jury returned a verdict in plaintiffs' favor on the issue of damages.

This appeal is concerned solely with the trial court's grant of a directed verdict to Fidelity on the cross-claim.

Our review of a directed verdict and the post-trial motion follows the principle that whenever a

fact question exists, upon which reasonable persons may differ, the trial court may not direct a verdict. *Caldwell v Fox,* 394 Mich 401, 407; 231 NW2d 46 (1975). However, a directed verdict may be granted in a case where no factual questions are disputed or in a case where a question of law will be dispositive regardless of the outcome of disputed factual questions. 2 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), p 529. Where, as in this case, there is no ambiguity in the contract language, its construction is a question of law for the trial court's determination. *Kilburn v Union Marine & General Ins Co, Ltd,* 326 Mich 115, 118; 40 NW2d 90 (1949).

The contract of insurance in this case is a "Michigan Standard Policy", a form of insurance policy adopted by statutory authority for general use throughout Michigan. MCL 500.2806; MSA 24.12806. The language of such a contract will be construed with reference to the parties' relations and the type of property insured. *Zeitler v Concordia Fire Ins Co,* 169 Mich 555, 560; 135 NW332 (1912). The courts will look to the language used and the context to determine the purpose sought to be achieved. *In re Certified Question, Ford Motor Co v Lumbermens Mutual Casualty Co,* 413 Mich 22, 32; 319 NW2d 320 (1982). The contract language will be given its ordinary and plain meaning, rather than a technical or a strained construction. *Weaver v Michigan Mutual Liability Co,* 32 Mich App 605, 607; 189 NW2d 116 (1971). See, also, *Geerdes v St Paul Fire & Marine Ins Co,* 128 Mich App 730, 733-734; 341 NW2d 195 (1983).

The language of the standard policy provides that an insurer may make a payment of loss to a mortgagee, and to the extent of that payment, may be subrogated to all the mortgagee's rights of recovery *or* the insurer may pay off the mortgage

debt and require an assignment of the mortgage. The language employed in this sentence is the disjunctive "or". The language is clear and unambiguous. The standard policy permits an insurer to choose between pursuit of its rights as a subrogee of a mortgagee or to pursue its rights as an assignee of the mortgagee. It does not allow both. If there is an intent to allow an insurer to pursue its remedy as an assignee *and* as a subrogee of the mortgagee, then the language of the standard policy does not disclose that intent. If the Legislature intended to allow both, it could have used the phrase "in addition, it may pay off", instead of the disjunctive language contained in the standard policy. However, the Legislature did not use a conjunctive phrase. Home Owners' remedy is with the Legislature and not the courts. Compare, *Innis v Fireman's Fund Ins Co,* 218 Mich 253, 256; 187 NW 268 (1922).

We reject Home Owners' argument that a right of subrogation exists under the contract by virtue of a subrogation paragraph added to the language of the standard policy. The paragraph provides that in the event of "any payments under this policy, the Company shall be subrogated to all the insured's rights of recovery therefore against any person or organization". This paragraph, apparently added by the parties, conflicts with the clear intent expressed by the language of the standard policy that an insurer elect between its remedies as a subrogee and its remedies as an assignee of the mortgagee.

We also reject Home Owners' claim that lines 78 to 83 of the standard policy apply only to a mortgagee's right of recovery against the mortgagor. Lines 80 and 81 expressly provide that the company shall be subrogated to "all the mortgagee's

rights of recovery", without limiting the rights of recovery to those against a mortgagor.

Home Owners next contends that no rationale exists for predicating an insurer's subrogation rights to proceed against third-party tortfeasors upon a denial of liability by the insurer to the mortgagor. By way of illustration, Home Owners posits a situation in which a furnace has been installed in the insured premises by a third party, that the installation was negligently performed, and that it has resulted in a fire which destroyed the property. As a result, the insurer has paid the mortgatee-loss payee the entire mortgage debt as required under its insurance contract. The insurer then has paid the blameless mortgagor as well. Home Owners contends that the insurer becomes subrogated to the rights of recovery of the mortgagee, and to the rights of recovery of the mortgagor as well, in its efforts to seek relief from the third-party tortfeasor. The illustration is not persuasive, because the election required by the standard policy applies only if the insurer claims that no liability exists as to the mortgagor or owner (*e.g.,* the mortgagor or owner is not blameless). Thus, the insurer's rights to proceed against the third-party tortfeasor of the hypothetical would not be affected by the language of lines 78 to 83 of the standard policy.

The construction of lines 78 to 83 adopted here does not give rise to a conflict with the language contained in lines 162 to 165 of the standard policy, a subrogation paragraph which provides:

"This Company may require from the insured an assignment of all right of recovery against any party for loss to the extent that payment therefor is made by this Company."

No inconsistency arises because lines 78 to 83

clearly state that an insurer shall be subrogated to all the mortgagee's rights of recovery under certain circumstances, however, it further requires an insurer to choose between its rights as a subrogee and its rights as an assignee of the mortgagee. Election of the rights of a subrogee waives those rights of an assignee of the mortgagee.

Home Owners does not cite, and we do not find, any authority which holds that, under the circumstances presented here, it is improper to require an insurer to elect between pursuing its rights as a subrogee and its rights as an assignee.

We conclude that the trial court properly granted a directed verdict in Fidelity's favor.

Affirmed.