BOYD v GENERAL MOTORS ACCEPTANCE CORPORATION

Docket No. 88738. Submitted January 12, 1987, at Detroit. Decided March 19, 1987.

Mary E. Boyd entered into an installment sales contract with General Motors Acceptance Corporation to finance the purchase of an automobile. Under the terms of the agreement, GMAC retained a security interest in the automobile and required that the automobile be insured during the term of the loan. Boyd obtained insurance from Auto Club Insurance Association. The insurance policy listed GMAC as the loss payee and security interest holder. A loss-payable clause in the insurance policy provided: "Loss or damage, if any, under the policy shall be payable as interest may appear to . . . [GMAC] and this insurance as to the interest of the . . . mortgagee . . . shall not be invalidated by any act or neglect or the . . . mortgagor . . . ." Boyd subsequently reported the automobile as stolen. It was recovered two days later severely damaged by fire. ACIA rejected a claim filed by Boyd, asserting that Boyd intentionally had the car stolen and destroyed. Boyd brought an action in Wayne Circuit Court against GMAC and ACIA. Plaintiff sought a judgment against ACIA for the value of the automobile and a stay preventing GMAC from collecting the balance due on the loan. GMAC counterclaimed against plaintiff, seeking the return of the automobile or a judgment equal to the value of the unpaid security interest. GMAC also filed a cross-claim against ACIA, seeking payment under the loss-payable clause of the insurance policy. The trial court, Thomas J. Brennan, J., entered a default judgment against Boyd on GMAC's counterclaim and granted summary disposition in favor of GMAC against ACIA on GMAC's cross-claim, ruling no genuine issue of material fact

REFERENCES

Am Jur 2d, Contracts §§ 240 et seq.

Am Jur 2d, Insurance §§ 269 et seq.

What amounts to theft, robbery, or pilferage within automobile theft policy. 48 ALR2d 8.

Rights in proceeds of vehicle collision policy, under "loss-payable" clause, of conditional seller, chattel mortgagee, or the like, of vehicle where there has been improper repossession or foreclosure after the damage. 46 ALR2d 992.

existed and GMAC was entitled to judgment under the terms of the insurance policy's loss-payable clause. ACIA appealed.

The Court of Appeals *held:*

1. Language contained in the loss-payable clause indicates that the clause was intended to operate in reference to the underlying policy. The policy provides insurance only for a "loss," which is defined in the policy as "direct and accidental loss of or damage to the insured car, including its equipment." Coverage is plainly and explicitly restricted to accidental losses and would thus not obtain for intentional destruction of the automobile by its owner.

2. The provision in the loss-payable clause that insurance shall not be invalidated by any act or neglect of the owner does not apply to an act of intentional destruction of the automobile by its owner since there is no insurance to invalidate because no coverage obtains for such intentional destruction.

3. ACIA has produced factual support for its allegation that plaintiff intentionally destroyed the automobile. Should ACIA succeed in proving its allegation, it would not be liable for breach of contract. The trial court therefore erred in granting summary disposition in favor of GMAC and against ACIA.

Reversed and remanded.

1. INSURANCE — CONTRACTS — JUDICIAL CONSTRUCTION.

The language contained in an insurance contract is to be construed with reference to the parties' relations and the type of property insured; courts will look to the language used and the context to determine the purpose sought to be achieved; the contract language will be given its ordinary and plain meaning, rather than a technical or strained construction.

2. INSURANCE — CONTRACTS — JUDICIAL CONSTRUCTION.

Insurance policies must be interpreted by reading them as a whole and any ambiguity must be construed in favor of coverage for the insured.

3. CONTRACTS — JUDICIAL CONSTRUCTION — MULTIPLE WRITINGS.

Two writings are to be construed together where one writing refers to the other.

4. INSURANCE — CONTRACTS — CONDITIONS OF COVERAGE.

A condition of insurance coverage may be a condition subsequent, that is, the existence or satisfaction of the condition terminates or suspends the insurance; clauses which provide that a policy shall become void or its operation defeated or suspended, or the insurer relieved wholly or partially from liability upon the

happening of some event, or the doing or omission to do some act, are not conditions precedent, but conditions subsequent and are matters of defense to be pleaded and proved by the insurer.

5. INSURANCE — CONTRACTS — CONDITIONS OF COVERAGE — EXCLUSIONS FROM COVERAGE.

A condition subsequent is to be distinguished from an exclusion from coverage; the result of a breach of the former is to terminate or suspend the insurance, while the effect of the latter is to declare that there never was insurance with respect to the excluded risk.

*Rickel, Earle, Wokas & Louisell* (by *Mark A. Baun*), for General Motors Acceptance Corporation.

*Dickinson, Brandt, Hanlon, Becker & Lanctot* (by *R. Michael John*), and *MacArthur, Cheatham, Acker & Smith, P.C.* (by *James G. Gross*), Attorneys of Counsel, for Auto Club Insurance Association.

Before: R. M. MAHER, P.J., and SHEPHERD and G. S. ALLEN,* JJ.

PER CURIAM. This is an appeal as of right by cross-defendant, Auto Club Insurance Association (ACIA), from a Wayne Circuit Court order of summary disposition under MCR 2.116(C)(10) against ACIA on the cross-claim of General Motors Acceptance Corporation (GMAC) for breach of a contract of insurance. We reverse the trial court's order of summary disposition and remand for further proceedings in the trial court. The pertinent facts underlying GMAC's claim are as follows.

On June 14, 1981, Mary Boyd entered into an installment sales contract with GMAC to finance the purchase of an automobile. As part of this

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

agreement, GMAC retained a security interest in the car. This clause provided:

> For the purpose of securing payment of the obligation hereunder, seller reserves title and shall have a security interest in said property until said obligation is fully paid in cash.

An application for a Michigan Title—Statement of Vehicle Sales was filed by GMAC with the Michigan Secretary of State. The contract between Boyd and GMAC required that insurance be procured while the vehicle was being financed.

Boyd insured the car with ACIA. The policy of insurance listed GMAC as the loss payee—security interest holder and contained a loss-payable clause. The crux of the instant dispute centers on this loss-payable clause, which provides in pertinent part:

> Loss or damage, if any, under the policy shall be payable as interest may appear to . . . [lienholder] and this insurance as to the interest of the Bailment Lessor, Conditional Vendor, Mortgagee or other secured party or Assignee of Bailment Lessor, Conditional Vendor, Mortgagee or other secured party (herein called the Lienholder) shall not be invalidated by any act or neglect of the Lessee, Mortgagor, Owner of the within described automobile or other Debtor nor by any change in the title or ownership of the property; provided, however, that the conversion, embezzlement or secretion by the Lessee, Mortgagor, Purchaser or other Debtor in possession of the property insured under a bailment lease, conditional sale, mortgage or other security agreement is not covered under such policy, unless specifically insured against and premium paid therefor; and provided, also, that in case the Lessee, Mortgagor, Owner or other Debtor shall neglect to pay any premium due under such

policy the Lienholder shall, on demand, pay the same.

The car was reported stolen by Boyd on June 17, 1983, and was located on June 19, 1983, severely damaged by fire. Subsequently, Boyd filed a claim with ACIA. ACIA denied the claim alleging fraud. ACIA also denied the claim of GMAC as the security lienholder. Essentially, ACIA asserted that Boyd intentionally had the car stolen and destroyed.

Boyd filed suit on November 7, 1983, against ACIA and GMAC requesting a judgment against ACIA for the value of the car pursuant to the insurance contract and a stay preventing GMAC from collecting the balance due on the promissory note. GMAC filed a countercomplaint against Boyd seeking the return of the vehicle or a judgment consisting of the unpaid security interest. GMAC cross-complained against ACIA for judgment under the insurance policy issued to Boyd. On January 20, 1984, a default judgment was entered by the Wayne Circuit Court against Boyd on GMAC's countercomplaint.

On October 11, 1985, the trial court heard GMAC's motion for summary disposition as to its cross-complaint. At the motion hearing, GMAC argued that under the loss-payable clause it was entitled to recover against the insurer. ACIA argued that it was not liable under the policy because Boyd allegedly destroyed the car. According to ACIA, this act constituted a "conversion" of GMAC's interest in the car and, therefore, recovery was excluded under the loss-payable clause. GMAC argued there was no conversion because title to the car was in the name of Boyd and GMAC's security interest was not capable of being converted. The trial court found that there was no genuine issue of material fact and granted sum-

mary disposition to GMAC on the basis of the loss-payable clause in an order entered on October 23, 1985.

As we have stated on many previous occasions, a motion for summary disposition based upon the absence of any genuine issue of material fact under MCR 2.116(C)(10) tests whether there is any factual support for the pleadings. In ruling on a motion for summary disposition under this subrule, the court must consider the pleadings, affidavits, depositions, admissions and other documentary evidence available to it. Giving the benefit of every reasonable doubt to the nonmoving party, the court must determine whether the kind of record which might be developed would leave open an issue upon which reasonable minds might differ. *Ambro v American Nat'l Bank & Trust Co of Michigan,* 152 Mich App 613; 394 NW2d 46 (1986).

Here ACIA, as the nonmoving party, asserts that there is a remaining issue of material fact—whether Mary E. Boyd deliberately destroyed the vehicle. However, if the policy is construed as urged by GMAC, whether Boyd intentionally destroyed the vehicle would be irrelevant to GMAC's claim. No issue of material fact would remain under the construction of the loss-payable clause argued by GMAC. If, on the other hand, we adopt the construction urged by ACIA, Mary Boyd's alleged acts of destruction must yet be proven to preclude a claim under the policy, necessitating a remand to the trial court for further proceedings.

ACIA offers two arguments in support of its contention that an intentional act of destruction would preclude recovery by GMAC under the loss-payable clause: (1) that the loss-payable clause provides no greater coverage than that provided in the underlying policy, which precludes coverage

for intentional destruction of the insured asset; and (2) that the loss-payable clause itself precludes recovery for intentional destruction of the insured asset. We have no reason to reach ACIA's second argument, since we hold that the loss-payable clause provides no greater coverage than that provided in the underlying policy.

We begin our analysis by noting the basic rules applicable to construction of insurance contracts. As we have recently held,

> [t]he language of such a contract will be construed with reference to the parties' relations and the type of property insured. *Zeitler v Concordia Fire Ins Co,* 169 Mich 555, 560; 135 NW 332 (1912). The courts will look to the language used and the context to determine the purpose sought to be achieved. *In re Certified Question, Ford Motor Co v Lumbermens Mutual Casualty Co,* 413 Mich 22, 32; 319 NW2d 320 (1982). The contract language will be given its ordinary and plain meaning, rather than a technical or a strained construction. *Weaver v Michigan Mutual Liability Co,* 32 Mich App 605, 607; 189 NW2d 116 (1971). See, also, *Geerdes v St Paul Fire & Marine Ins Co,* 128 Mich App 730, 733-734; 341 NW2d 195 (1983). [*Wilson v Home Owners Mutual Ins Co,* 148 Mich App 485, 490; 384 NW2d 807 (1986).]

Insurance contracts must be interpreted by reading them as a whole. The reading of an insurance contract as a whole may be necessary to determine whether there is an ambiguity in a particular clause. *Murphy v Seed-Roberts Agency, Inc,* 79 Mich App 1, 8; 261 NW2d 198 (1977). Ambiguities must be construed in favor of coverage for the insured. *Western Casualty & Surety Group v Coloma Twp,* 140 Mich App 516, 522; 364 NW2d 367 (1985).

Here, the opening phrase of the loss-payable

clause, "Loss or damage, if any, under the policy . . . ," plainly indicates that the clause was intended to operate in reference to the underlying policy. We have no quarrel with other decisions holding that loss-payable clauses constitute a separate contract of insurance. See *West v Farm Bureau Mutual Ins Co of Michigan,* 63 Mich App 279, 286; 234 NW2d 485 (1975), rev'd on other grounds 402 Mich 67; 259 NW2d 556 (1977), but we also believe that, where one writing refers to another, the two writings should be construed together. *Culver v Castro,* 126 Mich App 824, 826; 338 NW2d 232 (1983), and cases cited therein. We think it is clear that the loss-payable clause in this policy must therefore be interpreted in reference to the underlying policy of insurance and must be construed in reference to it.

The problem that arises in a further reading of this loss-payable clause is that it appears to confer greater coverage than the underlying policy. Thus, Part v of the underlying policy, entitled "Car Damage Insurance Coverages," provides insurance only for a "loss." The latter term is defined in Part v of the policy as follows:

> Loss means direct and accidental loss of or damage to the INSURED CAR, including its equipment.

We believe that this clause plainly and explicitly restricts coverage to accidental losses. An intentional destruction of the vehicle by the owner would therefore not be covered. On the other hand, the second phrase of the loss-payable clause provides that "this insurance . . . shall not be invalidated by any act or neglect of the . . . owner."

GMAC urges that the phrase "any act" be con-

strued to include the intentional destruction of the vehicle by the insured. This construction, according to GMAC, would be in accord with two of the basic principles of policy construction in that (1) it adopts the ordinary sense of the term "any act," and (2) it construes an ambiguity in favor of coverage. *Wilson, Coloma Twp, supra.* We believe that GMAC's reasoning has some merit. However, it ignores other fundamental principles of policy construction in that it fails to consider the loss-payable clause as a whole and also fails to explain the purpose to be achieved by the loss-payable clause. *Wilson, Murphy, supra.*

We first note that a construction of "any act" which includes intentional destruction ignores the antecedent phrase "shall not be invalidated." The ordinary meaning of "invalidate" is to make invalid. *Webster's New Collegiate Dictionary,* (1974), p 607. Since the policy only offers coverage for *accidental* loss, an act of intentional destruction is *never* covered in the underlying policy. It is difficult in this context to think of an act of intentional destruction as invalidating coverage when there is, in the first instance, no coverage for intentional destruction.

In this regard, intentional destruction contrasts with misrepresentation of ownership, *West v Farm Bureau Ins Co of Michigan,* 402 Mich 67; 259 NW2d 556 (1977), vacating the premises, *Cole v Michigan Mutual Ins Co,* 116 Mich App 51; 321 NW2d 839 (1982), wilful concealment of material fact, *Vormelker v Oleksinski,* 40 Mich App 618; 199 NW2d 287 (1972), lv den 388 Mich 791 (1972), and failure to answer relevant questions subsequent to a loss, *Gibson v Group Ins Co of Michigan,* 142 Mich App 271; 369 NW2d 484 (1985), lv den 424 Mich 851 (1985). The latter decisions required construction of loss-payable clauses when

the policy provided coverage, but for the failure of the loss payee to comply with a condition of the policy. Here, even compliance with all of the conditions of the policy would not allow recovery under the policy.[1]

The distinction between scope of coverage and condition of coverage is a subtle, but nevertheless important and basic concept for interpreting contract or policy language. Thus, according to one treatise,

[a] condition may be a condition subsequent; that is, the existence or satisfaction of the condition terminates or suspends the insurance. Clauses which provide that a policy shall become void or its operation defeated or suspended, or the insurer relieved wholly or partially from liability upon the happening of some event, or the doing or omission to do some act, are not conditions precedent, but conditions subsequent and are matters of defense to be pleaded and proved by the insurer.

A condition subsequent is to be distinguished from an exclusion from the coverage: the breach of the former is to terminate or suspend the insurance, while the effect of the latter is to declare that there never was insurance with respect to the excluded risk. Accordingly, the suicide clause in a life insurance policy is not a condition subsequent but rather suicide is simply not a risk insured against. [7 Couch, Insurance 2d (rev ed), § 36:49, pp 482-483.]

An intentional destruction of the vehicle under this policy of insurance on a motor vehicle is closely analogous to a suicide under a policy of life insurance. It does not invalidate coverage, because

---

[1] Indeed, even if refraining from intentional destruction is deemed an implied condition or term, compliance therewith would not allow recovery under the contract, since in that instance there would be no loss.

intentional destruction is simply not a risk insured against.

Since the phrase "any act" refers to an *invalidation,* we believe that it can fairly be interpreted to apply only to conditions, not scope of coverage under the policy. Moreover, since the phrase is fairly susceptible of only one meaning, we do not find it to be ambiguous. *Petovello v Murray,* 139 Mich App 639, 642; 362 NW2d 857 (1984). We therefore disagree with GMAC's contention that the ordinary meaning of the phrase must include intentional destruction and with GMAC's contention that the phrase creates an ambiguity which must be construed against ACIA as the insurer.

While interpreting the loss-payable clause at issue in this rather technical sense, we are not unmindful of the recent decision of our Supreme Court in *Powers v DAIIE,* 427 Mich 602, 620; 398 NW2d 411 (1986), where the Court, quoting *Pietrantonio v Travelers Ins Co,* 282 Mich 111, 116; 275 NW2d 786 (1937), ruled in part that " '[T]echnical constructions of policies of insurance are not favored.' " However, *Powers* involved an interpretation of the scope of coverage in a no-fault automobile insurance policy in claims by insured laymen. Here we are interpreting a clause which is only of interest to a commercial lender. We are not prepared to conclude that the *Powers* principle has no application to commercial lenders, but we are also unable to ignore significant differences between individual consumers and commercial lenders in bargaining power and technical expertise. Thus we note that, under one of the few rules of construction provided in the Restatement of Contracts 2d,

technical terms and words of art are given their

technical meaning when used in a transaction within their technical field. [2 Restatement Contracts 2d, § 202(3)(b), p 86.]

We believe that a loss-payable clause in an insurance contract falls well within the technical field of a commercial lender.

The conclusion that we have reached through analysis of the language of this loss-payable clause is bolstered by our consideration of the purpose to be achieved by the clause. As explained in one treatise,

> [m]any policies insuring property contain provisions which purport to protect the mortgagee against loss from causes insured against. Such clauses have been variously denominated as the "mortgage clause," the "mortgagee clause," the "standard clause," the "standard mortgage clause," the "standard mortgagee clause," the "union clause," the "union mortgage clause," the "loss-payable clause," and the "ordinary" or "open-mortgage clause."
>
> The ordinary mortgage or loss-payable clause merely provides in effect that the proceeds of the policy shall be paid first to the mortgagee as his interest may appear; but the so-called "standard" or "union" mortgage clause is somewhat more specific, in that it also provides that the mortgagee shall be protected against loss from any act or neglect of the mortgagor or owner, so that it shall not defeat the insurance so far as the interest of the mortgagee is concerned. [10A Couch, Insurance 2d (rev ed), § 42.682, pp 723-724.]

Here GMAC has obtained more than that which is provided in an "ordinary" loss-payable clause in that the clause also provides protection when the mortgagor or purchaser fails to comply with policy

conditions.[2] However, GMAC's interpretation would go still further and actually expand coverage to include illegal acts of destruction by the mortgagor or owner. Since the matter has not been argued or briefed, we are reluctant to conclude that such a policy provision would violate public policy. Nevertheless, where, as here, the policy provides coverage beyond an ordinary loss-payable clause, we would be extremely skeptical of any argument that the mortgagee has been denied the benefit of its bargain by a failure to expand coverage to include illegal acts of destruction by the mortgagor.

In sum, we conclude that ACIA did not undertake the risk of intentional destruction by the mortgagor of the motor vehicle insured by this policy. Should ACIA succeed in proving its allegation of intentional destruction by the mortgagor, it would not be liable for a breach of contract. ACIA has produced factual support for its allegation in the investigative report of Daniel Terski. We therefore conclude that the trial court erred in granting summary disposition under MCR 2.116(C)(10).

Reversed and remanded.

---

[2] Conditions of coverage are contained, for example, on page 1 of the policy under "WHAT YOU MUST DO IN CASE OF CAR ACCIDENT OR LOSS."