ROSSMAN v STATE FARM INSURANCE COMPANIES

Docket No. 111382. Submitted January 4, 1990, at Grand Rapids. Decided July 16, 1990. Leave to appeal applied for.

Rudolph Rossman sustained fatal injuries when the automobile he was driving was struck by a Melrose Township fire truck driven by volunteer fireman Bryce Cotanche. Frank Rossman, as personal representative of the decedent's estate, brought an action in Charlevoix Circuit Court against State Farm Insurance Companies, Cotanche's no-fault automobile insurer. Following a bench trial, Richard M. Pajtas, J., a judgment in the amount of the policy limit for personal injury liability was entered in favor of plaintiff. The trial court found that coverage was not excluded by a provision in the policy that stated there was no coverage for a nonowned car while such car was being used in a business or occupation. Defendant appealed.

The Court of Appeals *held:*

Given that defendant's policy did not define the terms "business" or "occupation," the trial court did not err in determining that the exclusion in question related only to a business or occupation that constituted the insured's principal means of livelihood.

Affirmed.

Michael J. Kelly, J., dissented and would reverse, opining that the terms "occupation" and "business," as used in defendant's policy, applied to any business or occupation, including part-time or ancillary occupations such as being a volunteer fireman.

Insurance — No-Fault — Exclusion for Nonowned Automobiles Used in Business or Occupation — Volunteer Firemen.

A volunteer fireman operating a fire truck is not engaged in a business or occupation for purposes of an exclusion in his no-fault automobile insurance policy for nonowned automobiles used in a business or occupation where the policy does not expressly define the terms "business" and "occupation."

References

Am Jur 2d, Automobile Insurance §§ 129, 351, 353.

Construction of clause of automobile liability policy excluding coverage in case of "commercial" use. 18 ALR2d 719.

*Dettmer, Thompson & Parsons, P.C.* (by *George R. Thompson*), for plaintiff.

*Read & Sharp* (by *John W. Sharp*), for defendant.

Before: BRENNAN, P.J., and MICHAEL J. KELLY and CYNAR, JJ.

CYNAR, J. On August 25, 1988, following a bench trial, the circuit court entered judgment in favor of plaintiff, Frank Rossman, on his declaratory judgment action against defendant, State Farm Insurance Companies, in the amount of $100,000, plus interest, costs and attorney fees. The judgment amount of $100,000 represents the limit of personal injury liability coverage under defendant's motor vehicle policy with its insured, Bryce Cotanche. Defendant appeals as of right, claiming that the trial court erred in its determination that coverage was not excluded under the "other business or occupation" policy exclusion where the insured, at the time of the underlying accident, was driving a Melrose Township fire truck while in his capacity as acting fire chief of the township's volunteer fire department. We disagree and affirm.

The underlying motor vehicle accident occurred on February 10, 1984. Responding to a fire alarm, Cotanche drove the fire truck to the intersection of US-131 and M-75 and collided with a car driven by plaintiff's decedent, Rudolph Rossman, resulting in fatal injuries to Rossman.

Plaintiff sued Cotanche in another action. Cotanche, the fire department, and the township were covered by an insurance policy on the fire truck issued by Celina Mutual Insurance Company. That action was settled as to Cotanche on July 13, 1987, by a consent judgment in the

amount of $210,000. In partial satisfaction of that judgment, Celina Mutual paid $110,000. Additionally, Cotanche assigned to plaintiff all rights he may have under his personal motor vehicle policy issued by defendant State Farm in return for plaintiff's agreement not to take or begin any further actions, appeals, or process against Cotanche regarding the accident.

Cotanche's insurance policy with defendant provides in pertinent part:

THERE IS NO COVERAGE FOR NON-OWNED CARS:

\* \* \*

2. WHILE:

a. BEING REPAIRED, SERVICED OR USED BY ANY PERSON *WHILE THAT PERSON IS WORKING IN ANY CAR BUSINESS; OR*

b. *USED IN ANY OTHER BUSINESS OR OCCUPATION.* This does not apply to a private passenger car driven or occupied by the first person named in the declarations, his or her spouse or their relatives. [Emphasis added.]

The policy does not separately define what is meant by "business" or "occupation."

In its written opinion, the trial court made the following pertinent factual findings:

He [Cotanche] has been employed as a carpenter since 1971. On the date of the accident, February 10, 1984, he was drawing unemployment compensation from Emmet Construction as a result of temporary unemployment. He was later called back to work following the accident.

\* \* \*

Volunteer firemen are nominated and then voted on at a membership meeting of the fire department. Three negative votes will exclude one from membership. Township officials have no part

in selecting members. They are paid $5 (Five Dollars) for every hour or partial hour for every fire run or drill. They are not compensated for attending mandatory meetings. Payment starts from the time the fire monitor activates and terminates after the return to the fire hall and all equipment is stowed. The testimony established that the compensation was for purposes of reimbursement for loss of wages and expenses incurred in getting to and from a fire. The compensation does not necessarily cover all of a fireman's lost wages. It may constitute a partial offset. Compensation is paid, however, regardless of whether a fireman has any lost wages. Originally, compensation consisted of the fire department providing an annual dinner. It was determined that this was an inappropriate use of Township funds and so the actual payment of $5 (Five Dollars) per hour was initiated.

No taxes were withheld from the compensation and no W2 form was issued. No benefits are provided. Mr. Cotanche was paid the additional sum of $500 (Five Hundred Dollars) annualized for serving in the capacity of acting fire chief. He testified that his income never exceeded $1,000 (One Thousand Dollars) for any one year. The testimony also indicated that compensation at the rate of $3 (Three Dollars) per evening was paid for a "class night" which might include a drill night. These evenings could last any where from one to four hours per evening, although the $3 (Three Dollar) per evening payment would not be altered.

\* \* \*

The Melrose Township fire department is not operated as a business for profit. It is common knowledge that all businesses are operated for the purpose of obtaining a profit and it is uncontroverted that is not the situation here. Further, persons engage in an occupation to sustain themselves economically. Such would be impossible with respect to the Melrose Township fire department. Indeed, Mr. Cotanche's perception of his

duties as a volunteer fireman was that of a civic duty. He had previously lobbied for no pay.

The trial court concluded "that driving a fire truck on an 'as needed' and 'as available' bases [sic] for nominal compensation to defray expenses does not constitute an activity that can be classified as a business or occupation."

Defendant essentially argues that the trial court misconstrued the meaning of the phrase "business or occupation" as a matter of law. We disagree.

In Michigan, the rules governing interpretation of an insurance policy are firmly established. As stated in *Allstate Ins Co v Miller,* 175 Mich App 515, 519; 438 NW2d 638 (1989):

> Insurance contracts must be interpreted by reading them as a whole. *Boyd v General Motors Acceptance Corp,* 162 Mich App 446, 452; 413 NW2d 683 (1987). The contract language must be given its ordinary and plain meaning, not a technical or strained construction. *Wilson v Home Owners Mutual Ins Co,* 148 Mich App 485, 490; 384 NW2d 807 (1986). If, after reading the entire contract, it can reasonably be understood in different ways—one providing coverage and the other excluding coverage—the ambiguity is to be liberally construed against the insurer and in favor of coverage. *Raska v Farm Bureau Mutual Ins Co of Michigan,* 412 Mich 355, 362; 314 NW2d 440 (1982), reh den 412 Mich 1119 (1982). *Furthermore, exclusionary clauses in insurance contracts are to be strictly construed against the insurer. Westen v Karwat,* 157 Mich App 261, 264; 403 NW2d 115 (1987). But, where the contract language is clear, unambiguous, and not in contravention of public policy, its terms will be enforced as written. *Raska, supra,* pp 361-362; *Usher v St Paul Fire & Marine Ins Co,* 126 Mich App 443, 447; 337 NW2d 351 (1983). [Emphasis added.]

In this case, we find that the words "occupation" and "business" are open to more than one generally accepted interpretation.

*Webster's Third New International Dictionary, Unabridged Edition* (1966), provides:

> *occupation* n *1a*: an activity in which one engages: a way of passing time. *b*: the principal business of one's life: a craft, trade, profession or other means of earning a living: EMPLOYMENT, VOCATION.
>
> *business* n *1a* (1) archaic: purposeful activity: activity directed toward some end. (2): an activity engaged in as normal, logical, or inevitable and usu. extending over a considerable period of time: ROLE, FUNCTION. (3): an activity engaged in toward an immediate specific end and usu. extending over a limited period of time: TASK, CHORE, MISSION, ASSIGNMENT. *b* (1): a usu. commercial or mercantile activity customarily engaged in as a means of livelihood . . . : OCCUPATION, POSITION, TRADE, LINE.

Under the more general definitions set forth above, it is indeed true that plaintiff's position as a volunteer fireman, earning a nominal sum of less than $1,000 per year, would qualify as an "occupation" or "business." However, it is also equally true that under the more restrictive, but nonetheless accepted, definitions above, the facts of this case do not establish that plaintiff's position was the "principal business of [his] life," or that it was a "commercial or mercantile activity customarily engaged in as a means of livelihood."

While the dissent in this case interprets the words "any other" in the phrase "any other business or occupation," to be all-inclusive and not limited to the insured's principal employment, we do not find such an interpretation to be so clear and unambiguous. Rather, within the expanded

context of the phrase, "while that person is working in any *car business*; or b. used in any other business or occupation," we find that the words "any other" can reasonably be read to refer to a principal business or occupation *other* than a principal business or occupation in a car-related business.

Therefore, given that exclusionary clauses of insurance policies are strictly construed against the insurer, we find no error in the trial court's determination that, under the facts of this case, plaintiff's position was not a "business or occupation." Had defendant preferred that only specific definitions of those words should control, it could have expressly provided as much within the body of its policy.

Affirmed.

BRENNAN, P.J., concurred.

MICHAEL J. KELLY, J. (*dissenting*). I disagree with the majority's reasoning that the words "occupation" and "business" in State Farm's insurance contract necessarily refer only to the insured party's principal employment or vocation.

The words of the insurance contract provide that there is no coverage for nonowned automobiles while "used in *any other business or occupation*." (Emphasis added.) The use of the words "any other" makes it obvious that the exclusion applies to all occupations and businesses of the insured, rather than to only his principal employment. This would necessarily include part-time or ancillary occupations, such as being a volunteer fireman. *Reiter v State Farm Mutual Auto Ins Co*, 357 F Supp 1006 (ED Ark, 1973). In *Reiter*, the court examined the identical exclusion clause, and held

that the use of the word "any" in reference to business or occupation expressly included part-time work as a volunteer fireman. I would follow the reasoning of *Reiter* here.

I would reverse.