*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

FARM BUREAU GENERAL INSURANCE
COMPANY OF MICHIGAN,

        Plaintiff/Intervenor-Appellee,

v

LOVELY HORE,

        Defendant/Plaintiff-Appellant,

and

OMAR HYDER KHAN, MINARA BEGUM
CHOWDHURY, RAFNA BEGUM CHOWDHURY,
MOHAMMED SALEH AHMED, RED AHMED,
TAZIM ULLAH, and DAVID EDWARD
MOLITOR,

        Defendants.

UNPUBLISHED
August 20, 2020

No. 347918
Wayne Circuit Court
LC Nos. 17-015647-CK,
       17-013286-NI

FARM BUREAU GENERAL INSURANCE
COMPANY OF MICHIGAN,

        Plaintiff/Intervenor-Appellee,

v

OMAR HYDER KHAN,

        Defendant-Appellant,

and

No. 347987
Wayne Circuit Court
LC Nos. 17-015647-CK,
       17-013286-NI

LOVELY HORE,

        Defendant/Plaintiff,

and

MINARA BEGUM CHOWDHURY, RAFNA
BEGUM CHOWDHURY, MOHAMMED SALEH
AHMED, RED AHMED, TAZIM ULLAH, and
DAVID EDWARD MOLITOR,

        Defendants.

---

FARM BUREAU GENERAL INSURANCE
COMPANY OF MICHIGAN,

        Plaintiff/Intervenor-Appellee,

v

MINARA BEGUM CHOWDHURY and RAFNA
BEGUM CHOWDHURY,

        Defendant-Appellants,

and

LOVELY HORE,

        Defendant/Plaintiff,

and

OMAR HYDER KHAN, MOHAMMED SALEH
AHMED, RED AHMED, TAZIM ULLAH, and
DAVID EDWARD MOLITOR,

        Defendants.

No.   348004
Wayne Circuit Court
LC Nos.  17-015647-CK,
           17-013286-NI

---

Before:  RONAYNE KRAUSE, P.J., AND SAWYER AND BOONSTRA, JJ.

PER CURIAM.

In these consolidated appeals, appellants Lovely Hore (Hore), Omar Hyder Khan (Khan), Minara Begum Chowdhury (Minara), and Rafna Begum Chowdhury (Rafna) appeal by right the trial court's orders granting summary disposition in favor of Farm Bureau General Insurance Company of Michigan (Farm Bureau) and declaring that Farm Bureau had no obligation to defend or indemnify Khan in any action arising out of a January 10, 2017 motor vehicle accident.[1] We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

On January 10, 2017, Khan agreed to transport several passengers to work as a favor for his niece, Dimple Barua (Barua), who operated a transportation company. Barua was self-employed and transported people who lived in Hamtramck and Detroit from their homes to work at local packaging businesses. Barua generally left her house around 7:00 a.m., picked passengers up, and drove them to work by 8:00 a.m. Barua owned two 14-passenger vans, as well as a six-passenger minivan. Barua charged each person she drove $3.50 per trip. Generally, one of the persons being transported would collect money from the other passengers and pay in full each morning. Barua did not have any employees and did not have anyone assist her with transportation on a regular basis.

In the early morning hours of January 10, 2017, Barua called Khan and asked him to help her transport passengers (her two larger vans being unavailable). Khan agreed to help. Barua did not pay, or offer to pay, Khan for helping her, nor did she offer to pay for his gas. Further, Khan did not ask Barua for any money, and Khan did not collect money from the passengers. Khan had never transported passengers for Barua before that day.

Barua testified at her deposition that, because Khan did not know where any of the passengers lived, Barua picked up a number of passengers and drove them to meet Khan. These passengers included the Chowdhurys, defendants Mohammed Ahmed (Mohammed) and Red Ahmed (Red), Hore, and defendant Tazim Ullah (Ullah). The passengers got out of Barua's minivan and entered Khan's Toyota Sienna. Accounts differed as to whether payment to Barua was made on the morning of January 10, 2017. Minara, Hore, and Ullah each testified they paid Barua that morning, but Barua testified that she did not collect payment that morning and planned to collect payment when she drove the passengers home later that day. As Khan was driving his passengers to work, he lost control of the vehicle and collided with a delivery truck allegedly operated by defendant David Edward Molitor (Molitor).

---

[1] Lovely Hore was the plaintiff in circuit court case 17-013286-NI, in which Farm Bureau intervened. She was a defendant in circuit court case 17-015647-CK, an action for declaratory relief brought by Farm Bureau. The trial court ordered those two cases consolidated; this consolidated lower court case spawned three separate appeals, which where themselves consolidated by this Court's administrative order. See *Farm Bureau Gen Ins Co of Mich v Khan*, unpublished order of the Court of Appeals, entered March 27, 2019 (Docket Nos. 347918, 347987, and 348004).

At the time of the accident, Khan was the named insured on an automobile insurance policy issued by Farm Bureau. The liability coverage section of the policy contained an exclusion provision related to vehicles used for business purposes:

> E. Exclusions
>
> 1. We do not provide Liability Coverage for any insured:
>
> * * *
>
> f. for liability arising out of the ownership or operation of a vehicle while it is being used to carry persons or property for a fee. Reimbursement of reasonable mileage expenses incurred by the insured is not considered a fee. This exclusion does not apply to a share-the-expense car pool[.]

After the accident, Khan filed a claim with Farm Bureau for liability coverage, seeking defense and indemnification from suits arising out of the accident. Farm Bureau unsuccessfully attempted on several occasions to obtain Kahn's presence for an examination under oath. Hore filed suit against Khan in September 2017; Farm Bureau intervened in that case. In October 27, 2017, Farm Bureau filed a complaint for declaratory relief against all defendants, seeking an order declaring that it was not obligated to "defend any action or indemni[f]y Omar Khan in any action maintained by any" of the defendants resulting from the accident. The trial court consolidated the two cases. Farm Bureau's complaint asserted that Khan was precluded from liability coverage because: (1) Khan's vehicle was used to transport passengers for a fee, contrary to the policy's business-use exclusion and (2) the policy required cooperation and appearance at an examination under oath, but Khan had failed to cooperate with Farm Bureau in its investigation of the claim by appearing at such an examination.

After Khan, Molitor, Mohammed, Red, and Ullah failed to answer Farm Bureau's complaint and were defaulted, Farm Bureau filed a motion for entry of default judgment for declaratory relief against them. Farm Bureau also filed a motion for summary disposition under MCR 2.116(C)(10), asserting that the business-use exclusion in the policy was not against public policy and clearly and unambiguously barred Khan from coverage under the policy. Farm Bureau also argued that Khan's failure to appear for an examination under oath had violated the insurance contract and was an additional ground for the denial of coverage.

After Farm Bureau filed its motion for summary disposition, Khan filed a motion to set aside the default against him and responded to Farm Bureau's motion for entry of a default judgment. Hore filed a response to Farm Bureau's motion for summary disposition; Minara and Rafna filed a concurrence with Hore's response.[2]

---

[2] Khan did not file a response to Farm Bureau's motion for summary disposition. At the summary disposition hearing, Khan's counsel stated that he was "not part of that motion."

At a combined motion hearing held on November 30, 2018,the trial court orally granted Khan's motion to set aside his default, denied Farm Bureau's motion for entry of default judgment against Khan[3] and took Farm Bureau's motion for summary disposition under advisement. The trial court subsequently entered an opinion and order granting Farm Bureau's motion and declaring that Farm Bureau had no obligation to defend any action or indemnify Khan in any action arising from the January 10, 2017 accident.[4] The trial court stated that this Court had previously held that "the specific exclusion at issue here is lawful, not against public policy, and must be enforced as written," and concluded that the exclusion was not ambiguous and provided that "there is no coverage for liability while a vehicle 'is being used to carry persons or property for a fee' "; it further noted that nothing in the exclusion's language "require[d] that Khan himself receive the fee." The trial court also found that although there was conflicting testimony regarding whether every passenger paid a fee on the morning of the accident, it was undisputed that Barua did not transport passengers for free and that "if a fee was not paid that day, it would be paid at a later date." The trial court concluded because Khan was transporting passengers for a fee (even if he did not receive the fee), and the policy excluded from coverage damage arising from the operation of a vehicle used to carry passengers for a fee, that the business-use exclusion applied and Farm Bureau did "not have a duty to defend any suit or settle any claim for bodily injury or property damage arising out of the January 2017 accident." The trial court did not address Farm Bureau's alternative argument that Khan's alleged failure to timely appear for an examination under oath precluded coverage.

These appeals followed.

## II.  INTERPRETATION OF EXCLUSION LANGUAGE

Appellants argue that the trial court erred when it found that the business-use exclusion in Khan's policy was unambiguous, consistent with public policy, and enforceable, and that the language of the exclusion precluded coverage regardless of whether the named insured actually received payment for the transportation of paying passengers. We disagree.

We review de novo a trial court's interpretation and application of an insurance policy. *Twichel v MIC Gen Ins Corp*, 469 Mich 524, 533; 676 NW2d 616 (2004). "[I]nsurance policies are subject to the same contract construction principles that apply to any other species of contract." *Rory v Continental Ins Co*, 473 Mich 457, 461; 703 NW2d 23 (2005). Therefore, "unless a contract

---

[3] Default judgments were entered against Mohammed, Red, Ullah, and Molitor; none of those parties sought to set aside the default judgments.

[4] The trial court noted that Farm Bureau's complaint had made the specific allegation that Khan had used his vehicle to operate his own transportation business, which was not supported by evidence; however, Farm Bureau's complaint also contained a broader allegation that Khan had used his vehicle to transport passengers for a fee generally. Relying on this language, the trial court concluded that the allegations were sufficient to put appellants on notice of Farm Bureau's claim that the insurance policy's exclusion prohibited coverage.

-5-

provision violates law or one of the traditional defenses to the enforceability of a contract applies, a court must construe and apply unambiguous contract provisions as written." *Id.*

"An insurance policy is a contract that should be read as a whole to determine what the parties intended to agree on." *McKusick v Travelers Indemnity Co*, 246 Mich App 329, 332; 632 NW2d 525 (2001). "The contract language will be given its ordinary and plain meaning, rather than a technical or strained construction." *Wilson v Home Owners Mut Ins Co*, 148 Mich App 485, 490; 384 NW2d 807 (1986). Ambiguities in "exclusionary clauses are to be strictly construed against the insurer." *Westen v Karwat*, 157 Mich App 261, 264; 403 NW2d 115 (1987). Any ambiguities in the contract language are also construed against the drafter. *Boyd v Gen Motors Acceptance Corp*, 162 Mich App 446, 452; 413 NW2d 683 (1987), overruled on other grounds by *Foremost Ins Co v Allstate Ins Co*, 439 Mich 378; 486 NW2d 600 (1992). "But, where the contract language is clear, unambiguous, and not in contravention of public policy, its terms will be enforced as written." *Miller*, 175 Mich App at 519.

If an exclusion in one's insurance policy applies to a particular claim, coverage under the policy is lost. *Century Surety Co v Charron*, 230 Mich App 79, 83; 583 NW2d 486 (1998). "Clear and specific exclusions must be given effect because an insurance company cannot be liable for a risk it did not assume." *Id.* MCL 500.2118(2)(f) provides that an insurer may establish an exclusion to coverage for the business use of a vehicle:

> (2) The underwriting rules that an insurer may establish for automobile insurance must be based only on the following:
>
> * * *
>
> (f) Use of a vehicle insured or to be insured for transportation of passengers for hire, for rental purposes, or for commercial purposes. Rules under this subdivision must not be based on the use of a vehicle for volunteer or charitable purposes or for which reimbursement for normal operating expenses is received.

MCL 500.2118(2)(f) "specifically permits insurers to limit insurance coverage on the basis of business use." *Husted v Dobbs*, 459 Mich 500, 506; 591 NW2d 642 (1999). The Supreme Court has defined "commercial use" as "use in business in which one is engaged for profit." *Lintern v Zentz*, 327 Mich 595, 601; 42 NW2d 753 (1950).

Again, the exclusionary provision in Khan's policy states in relevant part:

> E. Exclusions
>
> 1. We do not provide Liability Coverage for any insured:
>
> * * *
>
> f. for liability arising out of the ownership or operation of a vehicle while it is being used to carry persons or property for a fee. Reimbursement of reasonable mileage expenses incurred by the insured is not considered a fee. This exclusion does not apply to a share-the-expense car pool[.]

The trial court found that the exclusion's plain language was not ambiguous, stating that it "provides that there is no coverage for liability while a vehicle 'is being used to carry persons or property for a fee' " and that nothing in its language "require[d] that Khan himself receive the fee." We agree with the trial court's interpretation. Despite appellants' argument that the exclusion was inapplicable because Khan himself did not receive a fee for transporting passengers that day, the plain language of the exclusion does not require that the insured be the one to receive the fee in order for the exclusion to apply. Rather, the language of the exclusion focuses on the purpose for which the insured's vehicle was used at the time the accident occurred. The exclusion states that liability coverage is not provided to an insured when "liability aris[es] out of the . . . operation of a vehicle *while it is being used to carry persons . . . for a fee.*" (Emphasis added). Therefore, the trial court correctly concluded that whether Khan received compensation for transporting passengers for Barua was irrelevant, because the exclusion simply applies when the insured's vehicle is being used to transport passengers for a fee. Further, because MCL 500.2118(2)(f) specifically allows "insurers to limit insurance coverage on the basis of business use," *Husted*, 459 Mich at 506, Farm Bureau's exclusionary provision is consistent with public policy as expressed by our Legislature. See *Woodman v Kera, LLC*, 486 Mich 228, 246; 785 NW2d 1 (2010) (noting the "superiority of the Legislature to address matters of public policy" over the courts); *Tyler v Livonia Public Schools*, 459 Mich 382, 392 n 10; 590 NW2d 560 (1999) (explaining that "[i]t is the Legislature, not we [the courts], who are the people's representatives and authorized to decide public policy matters such as this"). Therefore, the trial court did not err in its interpretation of the language of the business-use exclusion.

## III. SUMMARY DISPOSITION

Appellants also argue the trial court erred by concluding that no genuine issue of material fact existed as to whether Khan was using his vehicle to transport passengers for a fee at the time of the accident and, as a result, that his claim was barred by his policy's business-use exclusion. We disagree.

"This Court reviews de novo a trial court's decision on a motion for summary disposition." *Johnson v Vanderkooi*, 502 Mich 751, 761; 918 NW2d 785 (2018). When reviewing a trial court's decision on summary disposition under MCR 2.116(C)(10), we consider the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party. *Sallie v Fifth Third Bank*, 297 Mich App 115, 117-118; 824 NW2d 238 (2012) (citation omitted). We are "limited to considering the evidence submitted to the trial court before its decision on the motions." *Calhoun Co v Blue Cross Blue Shield of Mich*, 297 Mich App 1, 12; 824 NW2d 202 (2012). Summary disposition is appropriate when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. MCR 2.116(C)(10); *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008). A court cannot make factual findings or weigh credibility when deciding a motion for summary disposition. *In re Handelsman*, 266 Mich App 433, 437; 702 NW2d 641 (2005).

The trial court did not err by finding that no genuine issue of material fact existed regarding whether Khan had transported passengers for a fee and, as a result, that the business-use exclusion in his policy barred his claim. Barua testified that she was self-employed and transported people to work for a fee. On the day of the accident, Barua intended to transport passengers, but her larger transport vans were not in service, leaving only her minivan available. Needing to transport more

than six passengers to work, Barua called Khan to assist so that she could provide her usual for-fee service. On the morning of the accident, Barua picked up the Chowdhurys, Mohammed, Red, Hore, and Ullah, because Khan did not know where they lived, dropped them off with Khan, and then drove to other houses to pick up additional passengers and transport them to work. There was conflicting testimony regarding whether Barua received any payment on the morning of January 10, 2017, but it was undisputed that her passengers knew that they were receiving transportation in return for payment and that Barua either collected or intended to collect the money later.

Although Khan did not receive payment for assisting Barua, either from the passengers or from Barua, each passenger in Khan's vehicle either paid, or was expected (and expecting) to pay, Barua for the transportation they received. As discussed, under the clear, unambiguous language of the business-use exclusion in Khan's policy, it did not matter that Khan himself did not receive the fee or intend to collect a fee. Although appellants argue that the differing testimony concerning whether Barua had collected funds that morning raises a genuine issue of material fact, the precise moment the passengers tendered their money was immaterial. Whether they paid the fee before they were driven to work or after, they knew they were receiving transportation that morning for a fee. The clear, unambiguous language of the business-use exclusion in Khan's policy with Farm Bureau bars liability coverage when an insured's vehicle is used to transport persons for a fee and, as a result, the trial court did not err by granting summary disposition in Farm Bureau's favor on the basis of the exclusion. *Miller*, 175 Mich App at 519.

In the alternative, appellants argue that Khan was engaged in voluntary or charitable conduct, such that an exception to the business-use exclusion should apply. We disagree. Even if Khan himself did not receive any sort of compensation for assisting Barua, the underlying use of Khan's vehicle was commercial, not charitable or volunteer. Again, the language of the exclusion focuses on the use of the vehicle, not the conduct of the named insured; the fact that Khan may have volunteered his vehicle to help his niece does not alter the fact that his vehicle was used to transport passengers for a commercial purpose.

Affirmed.

/s/ David H. Sawyer
/s/ Mark T. Boonstra